E. W. STEPHENS *et al*. Appellees, *vs*. JESSE E. HOFFMAN *et al*. Appellants.

*Opinion filed October 24, 1916—Rehearing denied Dec. 8, 1916.*

1. EVIDENCE—*what not a sufficient showing to admit testimony of a witness on a former trial.* The testimony of a witness on a former trial of an ejectment suit is not admissible upon a showing being made that he is living in another State, where no reason is shown why his deposition could not have been taken had the party desiring to use his testimony exercised due diligence.

2. SAME—*direct contradiction of testimony is not essential to discrediting of a witness.* A witness may be contradicted by the facts which he states as completely as by direct adverse testimony, and there may be so many omissions or discrepancies in his testimony as to discredit him notwithstanding it is not directly contradicted.

3. INSTRUCTIONS—*what does not render·giving of an instruction erroneous.* The giving of an instruction in an ejectment case stating the correct abstract rule that a presumption of delivery will arise from the fact that a deed is found in the possession of the grantee unless such presumption has been overcome by the evidence in the case is not rendered erroneous because of the fact that the testimony tending to show delivery of the deed is contradicted.

APPEAL from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

SAMUEL C. DOOLEY, and JESSE E. HOFFMAN, for appellants.

CHARLES M. PEIRCE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an ejectment suit brought by appellees against appellants in the circuit court of McLean county. The case has been brought twice to this court before. (263 Ill. 197; 269 id. 376.) There have been at least four trials between the parties, the verdict and judgment in the trial court in each instance being in favor of appellees. The evidence in

275 — 32

this record is substantially the same as it was on the first appeal, except that the testimony of Frank Gillespie, the refusal to admit which was the principal reason for reversing the first time the case was here, was admitted in full on this trial.

Cynthia Peeler and her son, William Peeler, and his wife, executed a deed to the property here in question, the consideration being $2000. The chief point in dispute is whether, when the deed was executed and delivered, the grantee was Frank Gillespie or William Stephens, the deed having been originally written with Gillespie as grantee and that name thereafter marked out with red ink and Stephens' name inserted. Appellees argue, and offer evidence to show, that Stephens' name was inserted as grantee at the request of both Peeler and Gillespie because Gillespie could not carry out his part of the contract. Stephens died before the beginning of this litigation and his testimony was never taken on the questions here involved. The details of the transaction are set out fully in the opinion given by this court on the first appeal and we shall not attempt to set out again what was there stated but will give the substance of Gillespie's testimony on this last trial. Gillespie was an employee of the street railway company in Bloomington at the time of the transaction and at the time of the trial was living in Peoria. He testified that he knew the Peelers and Stephens; that Peeler told him the family were going to move to California and wanted to sell the property and offered him the house and lot and a vacant lot for $1800; that witness had $1400 in cash and Mrs. Peeler said she would give him time on the balance; that one day Stephens asked him if he had saved any money, and he replied that he had saved a little and was going to buy the Peeler property, and then Stephens asked him to see Mrs. Peeler and see if she would take Gillespie's note, with Stephens' name on it also, for the whole property; that witness found that Mrs. Peeler would take such a note

for $1600 if Stephens would take the vacant lot for $200 cash; that this arrangement was carried out, and witness gave Stephens $1400 and the latter signed a note with Gillespie for $1600; that the deed from the Peelers to Gillespie was executed and witness and Stephens took this deed to William Mason to have a mortgage drawn covering the property in order to secure Stephens for signing the $1600 note; that Stephens was to give Gillespie a note for $1400; that when the note to the Peelers was paid these two notes were to be exchanged; that while they were at Mason's office Mason was called out and at about the same time Gillespie left, and when they came back Stephens was gone and the deed also; that he found out later that Stephens had gone to Alex. Keady's office and that the deed had been changed so that Stephens was grantee, and recorded; that he met Stephens coming out of Keady's office and charged him with doing wrong in having the deed changed, and Stephens agreed to give him a note for his (Gillespie's) $1400 and later on did give him the note; that afterwards Gillespie gave up the $1400 note to Stephens, apparently without consideration. Gillespie further testified, on cross-examination, that the $1400 he gave to Stephens was all in currency and had been in his house in a baking-powder can; that he had a row with Keady about changing the grantee in the deed after it was executed and Keady pushed him out of his office. Keady swore in this case, as he did in the former case, that Peeler and Gillespie brought the deed to him with Gillespie's name as grantee and told him Gillespie couldn't carry through the trade but that Stephens had taken it off his hands, and they asked him to change the grantee; that he told them it was best to draw a new deed, but they did not wish to pay for one and suggested that he erase Gillespie's name with red ink lines and insert Stephens' name; that he did so and then took the acknowledgment of the Peelers, who were the grantors in the deed. Keady also testified that after Stephens' death Gillespie came to him

and asked him if he didn't want to make some money, and said the Stephens estate was worth from $75,000 to $100,-000, and if he would come into court and swear that Gillespie's name was not erased from the deed before Keady took the acknowledgment he (Gillespie) would give him $200, and that was the reason he put Gillespie out of his office. Testimony was also offered on this trial on behalf of appellees by several witnesses that Gillespie's reputation for truth and veracity was bad. Several witnesses testified on behalf of appellants that Gillespie's reputation for truth and veracity was good.

Appellants insist that they were innocent purchasers of this property from Gillespie and had a right to rely upon the fact that an ejectment suit with reference to the same property had been decided in favor of Gillespie and appealed to this court, which appeal, after they had purchased the property, was dismissed. The court refused to allow the proceedings in this former suit to be introduced in evidence, as we understand the record, for the reason that the complete record was not offered. On the record before us this question cannot be raised. There is no evidence here that appellants purchased this property from Gillespie or paid him anything for it, although we have assumed from the records in the other cases that they took this property for attorney's fees growing out of this litigation. We think the conclusion is necessarily drawn from the records in all the litigation over this matter that appellants knew all about the condition of the title and the contest over it between Gillespie and the heirs of Stephens at the time they purchased the property. Manifestly, they cannot be held to be innocent purchasers. They took the title subject to all the equities that could be urged by Stephens or his heirs with reference to Gillespie's claim of title.

Appellants further argue that the trial court erred in refusing to admit the testimony of Charles A. Marshall given on a former trial, that witness being outside the jurisdic-

tion of the court at the time of this trial. The only difference between the record in this case and in *Hoffman* v. *Stephens,* 269 Ill. 376, was, that in that case it was not shown that he was outside of the jurisdiction of the court, while in this trial a witness testified that he was in Oklahoma, having left Illinois several years ago. The witness knew this only from correspondence with his mother. No reason is shown why his evidence might not have been taken by deposition if appellants had exercised due diligence. Under the reasoning of the court in 269 Ill. when the case was last here, the trial court properly refused to admit Marshall's testimony given at a former trial. See, also, *Cassady* v. *Trustees of Schools,* 105 Ill. 560; *Bergen* v. *People,* 17 id. 426; 16 Cyc. 1098.

Appellants further argue that the court erred in giving an instruction on behalf of appellees with reference to the presumption of delivery that would arise from the deed in question being found in Stephens' possession unless such presumption had been overcome by evidence in the case. They concede that this instruction states correctly an abstract principle of law but insist that it was not applicable to the facts in this case, as they had contradicted, by direct testimony, the delivery of the deed to Stephens. "Legal presumptions do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." (*Helbig* v. *Citizens' Ins. Co.* 234 Ill. 251; *Graves* v. *Colwell,* 90 id. 612.) The evidence as to the delivery of the deed clearly did not rest, alone, on the testimony of Gillespie. Keady's testimony that he had changed the grantee in the deed at the request of Peeler and Gillespie and afterward took the acknowledgment of the grantors and that the deed had come back from the recorder's office to him for a certificate; the testimony, also, that the deed was found among Stephens' papers at his death, that the insurance policy on the house had been

assigned by Mrs. Peeler direct to Stephens, that Stephens had possession of the property and collected the rents and paid the taxes from the time the deed was recorded until his death, and other circumstances in the record, tended strongly to corroborate the claim of the appellees that the deed was delivered to Stephens. Taking all the instructions together, the jury could not have been misled by this instruction.

Counsel for appellants argue that Gillespie's testimony as to how the name of the grantee in the deed in question was changed is not contradicted by any other testimony in the record and that his testimony stands unimpeached, and therefore the verdict cannot be upheld. The rule undoubtedly is that the positive testimony of a witness, uncontradicted and unimpeached, either by positive testimony or by circumstantial evidence, cannot be disregarded by either court or jury; but there may be such an inherent improbability in the statement or testimony of a witness that the court may disregard it, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions or discrepancies in his testimony as to discredit him. (*Quock Ting* v. *United States,* 140 U. S. 417; *Podolski* v. *Stone,* 186 Ill. 540; *People* v. *Davis,* 269 id. 256.) Gillespie's testimony was contradicted by the testimony of Keady on the vital point in this case concerning the change of the name of the grantee, and also as to several other important features by other witnesses in the case. Furthermore, his own testimony is of such a nature that the jury would be justified in disbelieving his story as to the transactions between himself and Stephens.

We find no error in the record, and the evidence, in our judgment, sustains the verdict. The judgment of the circuit court will therefore be affirmed. *Judgment affirmed.*