No. 21,115.

SOPHIA P. ZEEB, *Appellee,* v. CHARLES BAHNMAIER, *Appellant,* et al.

### SYLLABUS BY THE COURT.

1. AUTOMOBILES—*Negligence of Adult Son—Liability of Parent.* A father is not liable in damage for the torts of his adult son on the mere ground of paternity.

2. SAME—*Negligence of Owner's Son—Injuries—Liability of Owner.* An owner of an automobile is not liable in damages for the tort of another adult person who is in the possession of it and who has the control and management of it, on the mere ground that the owner was present when such other person, although experienced in the operation of the automobile, committed a tort by momentary negligence in driving it.

3. SAME—The defendant owned an automobile which his son, an adult in business for himself, was accustomed to use for business or pleasure with defendant's permission. The son was wont to use it to drive to church. Sometimes defendant or other members of the family or all together accompanied the son. At such times the son always drove, and exclusively operated the car. On the day of the accident the son invited his parents to accompany him to church. On the return journey the son, while operating the car at a speed of two or three miles an hour, overtook and collided with a buggy through his negligent failure to give the occupants of the buggy sufficient time to get their vehicle to the side of the road, and one of the occupants of the buggy, the plaintiff, was injured. The jury specially found that the father, who owned the car, had nothing to do with its operation or control at the time of the accident. *Held,* that the mere fact of ownership and the mere presence of the owner at the time of the accident do not warrant a judgment for damages against the owner of the car.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed November 9, 1918. Reversed.

*R. E. Melvin,* of Lawrence, for the appellant.

*John J. Riling,* and *Edward T. Riling,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered a judgment against the defendant for personal injuries. Plaintiff and her brother were riding in a one-horse buggy on a public road. The defendant's adult son was driving defendant's automobile, which

approached the buggy from the rear. Defendant and other members of his family were in the car. The automobile overtook the buggy and, in attempting to pass, the right front fender of the car struck and crushed the left rear wheel of the buggy, causing the plaintiff to be thrown out and injured. On approaching the buggy the auto horn was sounded, but owing to a strong wind the occupants of the buggy did not hear the warning until very shortly before the collision. When plaintiff and her brother did learn of the approach of the automobile, her brother, who was driving the horse, pulled the rein to the right, but before the horse had time to draw the buggy out of the way the mishap occurred.

Defendant pleaded a general denial, contributory negligence, and that her injuries were occasioned by her own fault or that of her brother, or of both.

The evidence showed that the defendant's son, a man of mature years, was driving the car; that he was in the habit of using the car about his own affairs; and that on the day of the accident he drove the car to church, and asked his parents, defendant and wife, to go with him, and they with other members of the family did so. The son testified:

"Am doing for myself; rented farm of father on my own account; pay crop rent; am of age; accustomed to drive father's auto; drive it about my own affairs; . . . car belongs to father; . . . goes to church in it once in a while; I have sometimes invited him to go to church with me in the car; this particular Sunday I invited them to go with me; they consented and went; they had nothing at all to do with the car that day; I am somewhat of a leader in the family; father pays for gasoline, keeps up repairs; I run it; father runs it, too; Sunday of accident I invited them to go, they were my guests then."

The jury answered certain special questions:

"Q. 3. Do you find that defendant or the driver of the car were guilty of negligence or carelessness in the operation of the auto? A. Yes; the driver of the car.

"Q. 4. If you answer question 3 in the affirmative state whom you find to be guilty of carelessness or negligence? A. Both Charles Bahnmaier the owner and his son Roy Bahnmaier the driver of the car.

"Q. 4½. If you answer question 3 in the affirmative state in what particulars he or they were negligent or careless? A. In this, that defendant failed to give the driver of the horse and buggy sufficient time in which to turn out.

"Q. 5. What, if anything, did the defendant or the driver of the auto

Zeeb v. Bahnmaier.

fail to do in the handling of the auto that ordinary carefulness and prudence would require? A. The car was not stopped in time to avoid the accident.

. . . . . . . . . . . .

"Q. 11. Did the driver of the auto, after warning the occupants of the buggy by shouting, keep the car under reasonable and proper control? A. Had control but failed to exercise control.

"Q. 12. At what rate of speed was the auto running when it struck the buggy wheel? A. Two to three miles an hour.

. . . . . . . . . . . .

"Q. 16. What, if anything, had the defendant to do with the operation or control of the auto on the day of the accident and at the time thereof? A. Nothing."

Several errors are assigned, but the important question is whether the law attaches a liability to ownership of an automobile for damages occasioned by the machine, which occur when the owner is present, but only as a passenger, and when another responsible person is operating the car in accordance with his own judgment and without directions from the owner. On this question the trial court instructed the jury thus:

"I think one of the first questions that will challenge your consideration will be the extent to which Charles Bahnmaier, the owner of this automobile, the father of this boy [adult] is liable for the negligence of his son under the circumstances of this case. As to that, I have to advise you that a father is not liable for the negligence of his son, either an adult or a minor, if the son is acting away from the father, and independently acting for himself; but if the son, either a minor or an adult, is acting for the father, operating the automobile in the usual and ordinary way, doing the things with the automobile that the father himself might do if the son were not present, then I think you will be warranted in saying that if the son was negligent, the father would be liable for damages growing out of the negligence. More than that, I think if the father was present in the automobile with the son, and the son was engaged in an act of negligence and the father saw it and took no steps to prevent it and it was his automobile, the father would be liable for any damages growing out of the negligence of the son."

The law imposes no liability on a father for the tort of his son on the mere ground of paternity. This is the law even where the tort is that of a minor son (*Mirick v. Suchy*, 74 Kan. 715, 87 Pac. 1141; *Smith v. Jordan*, 211 Mass. 269). Unless some rational theory of principal and agent, or of master and servant, supported by substantial evidence, can connect the father with the act or delict of the son, the father is no more liable than a stranger. And this principle holds true whether

the father is present or absent when the tort of the son is committed. If I do no more than permit my adult son to use my horse or my shotgun whenever he cares to do so, and if my son is conceded to be experienced in the management of horses and in the handling of shotguns, and is not known to be careless therewith, shall I be held liable if he, in a moment of negligence, rides down a pedestrian or shoots a neighbor's cow, merely because the horse or the shotgun is mine and because I was personally present when the negligent mishap occurred? There is no such rule of law in any twentieth-century textbook. Any such rule of liability attaching to mere ownership of an automobile, if found in the decided cases, must have been announced when the judiciary were less familiar than now with that distinctively modern invention. Why should the mere presence of the owner of the automobile, which was in the possession, control and exclusive management of another responsible adult at the time of the tort, subject the owner of the car to liability in damages? An automobile is a more safe and dependable chattel than a horse, and it is not an inherently dangerous instrument—certainly much less so than a shotgun.

In *Watkins v. Clark,* post p. 629, just decided, Mr. Justice Burch, speaking for the court, and with his characteristic clarity and precision, said:

"The automobile was not a dangerous instrumentality which the defendant let loose in the community. The automobile was not a guilty agent in the accident, bringing punishment on the owner like the deodands of English law. Mismanagement by the driver was the cause of the accident. The purchase of the automobile by the defendant for the use of his family, including his daughter, operated as a gift to them of the right to use it. When using it to accomplish his purposes, whether business or pleasure, they represent him, but when they exercise their privilege and use it to accomplish their own distinct purposes, whether business or pleasure, they act for themselves, and are alone responsible for their negligent conduct. The fact that the automobile was purchased for use by the owner's family did not make him generally responsible for its subsequent operation, and because the car was subject to appropriation by the members of his family for their own use, there is no presumption that any particular trip was made in his behalf. The use made of the car on any particular occasion is a question of fact, to be determined by evidence showing the fact, and in this instance there was no evidence that anybody was concerned except the daughter.

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and

strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result, an adaptation of the law of master and servant, and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition—putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.' As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, *prima facie* it was father's little outing by proxy, and if an accident happened, *prima facie* father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact—ownership of the car—by declaring that the question of 'agency' was one for the jury—a process known in some quarters as 'passing the buck.' The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts." (p. 630.)

In the present case, it was not shown that the father did or failed to do anything whatever which in any way contributed to the accident.

"Q. 16. What, if anything, had the defendant to do with the operation or control of the auto on the day of the accident and at the time thereof? A. Nothing." [Special finding of the jury.]

The jury specifically says the defendant father had nothing to do with the car or its management on the day of the accident. It was not shown that the son was using the car for his father's business or pleasure, or for any other project set on foot through the father's agency. The son was going to church in the automobile and invited the father and mother to accompany him. They went. If the father had stayed at home he would not be liable, and the fact that he accepted his son's invitation and did go, as did other members of the family, and was present

when the accident happened, does not render him liable for the tort of his son.

The supreme court of Michigan arrived at the same conclusion in a case where the owner of an automobile had loaned it for a day to a friend, and then at the latter's invitation the owner went along as a guest or passenger, and a tortious accident occurred through the fault of the borrower who drove the car. The court held that, in the absence of a statute (since enacted in Michigan), the owner was not liable. (*Hartley v. Miller,* 165 Mich. 115, 33 L. R. A., n. s., 81.)

No negligence of the father is disclosed by the evidence, and as this appeal does not involve the liability of the son, other questions presented need no consideration.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.

MASON, J. (dissenting): Accepting as sound the general principles of law declared in the opinion, I think the evidence justified a finding that the defendant was liable. The answer to the special question quoted seems to me to be intended to mean merely that the father had no part in the physical management of the car.

JOHNSTON, C. J., concurs in the dissent.