(No. 20092.—

JOSEPHINA NELSON, Admx., Defendant in Error, *vs.* THE STUTZ CHICAGO FACTORY BRANCH, Inc., Plaintiff in Error.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

TENNEY, HARDING, SHERMAN & ROGERS, (S. ASHLEY GUTHRIE, and L. DOW NICHOL, JR., of counsel,) for plaintiff in error.

JOSEPH D. RYAN, for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment of the superior court of Cook county for $10,000 against the Stutz Chicago Factory Branch, Incorporated, the plaintiff in error, in favor of Josephina Nelson, administratrix of the estate of Carl Alfred Nelson, deceased, for damages occasioned by the death of Nelson resulting from the alleged negligence of the plaintiff in error, and on the petition of the plaintiff in error a writ of *certiorari* was awarded to review the record.

Error is assigned upon the improper and prejudicial argument to the jury of the defendant in error's attorney, upon the giving of an instruction, and upon the denial of the motions of the plaintiff in error to instruct the jury to find the defendant not guilty. Much the greater part of the

briefs and arguments has been devoted to the discussion of the question raised by the last mentioned assignments of error.

A few minutes before six o'clock in the morning of Sunday, April 10, 1927, Carl Alfred Nelson, a boy about a month under ten years old, was killed while riding with his parents in an automobile, carefully driven by his father, by a collision in the outer drive in Lincoln Park with an automobile owned by the plaintiff in error and negligently driven by Joseph R. Smith, its employee as an automobile salesman. It is admitted that Smith's negligence caused the accident and it is not claimed that the boy or his parents were not in the exercise of ordinary care. The only question arising on the motion to direct the verdict was, therefore, whether Smith at the time of the accident was operating the car in the business of the plaintiff in error with its authority.

The testimony is not contradictory in any material respect. The witnesses who testified to the accident were Mr. and Mrs. Nelson and James Shields, a State police officer. The testimony in regard to Smith's authority was given by Smith himself, who was called by the defendant in error, and by five other employees or officers of the plaintiff in error who were called by it. They were Cerf, Burns, Peterson, Robinson and Clark.

The plaintiff in error is a corporation which was engaged in selling Stutz automobiles in Chicago, having two places of business, the main office at 2500 South Michigan avenue, where it maintained show rooms and a service garage, and a branch, called the north branch, at 5051 Broadway. The main office was conducted by Cerf, the president, who was also manager; Burns, who was sales manager; Peterson, treasurer, and a force of salesmen and demonstrators, the duties of the former being to sell cars and of the latter to drive cars in demonstrations to prospective purchasers. Salesmen received as their compensation a commission on sales made by them and demonstrators

a commission on cars sold to purchasers to whom they had made demonstrations. The north branch was conducted by Edward Clark as manager, who was the only salesman at that place and the only employee except a porter. Eight or ten salesmen were employed at the main office and two demonstrators. The method of transaction of business there was, that salesmen were assigned each morning at eight o'clock to salesroom duty, so that each would be on that duty a certain number of days each month and during the other days would be engaged in calling on prospective purchasers. The man on floor duty was entitled to all customers who came in and to a commission on sales made to them. Certain cars were kept for demonstrations with demonstrating drivers, and cars and drivers were under the supervision of the sales manager. Usually demonstrations were booked by the salesman in a book kept for that purpose showing the time and place of the demonstration, and one of the demonstrators employed for that purpose drove the car. Salesmen did not demonstrate cars and demonstrators did not sell cars, and neither had any authority to take out cars without the order of the manager or sales manager. Clark, the manager of the north branch, was neither an employee nor officer of the main branch. He had no authority to order demonstrating cars from the main branch and was not subject to the rules of that branch or the orders of its sales manager. He owned a Stutz touring car which he used for demonstrations to prospective purchasers. By arrangement with the main branch it was customary to have one of the demonstrating cars driven to the north branch each day at six o'clock in the evening to see if Clark had occasion to demonstrate a car for a prospective customer and to remain there as long as Clark thought it was necessary. If Clark had no demonstration to be made he would send the demonstrator back, but if he had one he could keep him as long as necessary. Clark had no other authority over the demonstrators of the main branch. They were

subject to Burns' authority, and their orders were not to stay after 9:30, so that they could return the car to the main branch by 10:00 or 10:15, in order that the car might be washed that evening. A salesman had no authority to use a car without express permission from the sales manager. When a demonstration was to be made, a car, and a demonstrator who was employed for that purpose, were assigned to the salesman.

Joseph R. Smith, the driver of the car involved in the accident of April 10, had been employed by the plaintiff in error about a year—eleven months as a demonstrator and the last month as a salesman. On the evening of April 9 another salesman, Thorsen, was in charge of the selling floor. Smith was there with him when Clark telephoned from the north branch that he wanted a demonstrator. Thorsen answered that the demonstrator was gone and the car was on the wash-rack. Smith then tried to telephone Burns, and Robinson, the car washer, tried to telephone both to Burns and Cerf, but their efforts were unsuccessful. Thereupon Smith, without permission from anyone, took the car from the service station about 10:00 o'clock, and, taking Thorsen with him, drove it to the north branch, where they arrived about 10:45. Smith demonstrated the car to Clark's customer and returned to the north branch at 11:30. Thorsen had waited at the north branch, and Smith, after having something to eat, took him to his home on Lawrence, near Kedzie. Smith knew when he took the car from the service station that there was to be a party that night at the apartment of friends of his on Broadway, near Belmont, but did not then know whether he would go. He did, however, drive back from Lawrence and Kedzie to his friends' apartment, where he arrived about 1:00 o'clock, finding the party in progress. He remained there playing cards until about a quarter of six Sunday morning, when he started back to 2500 South Michigan avenue, going east on Broadway, through Lincoln Park on the east drive,

where he had the collision. If he had returned to the service station after finishing his work at the north branch he would have arrived about 1:30, but he could not have got into the station, as it was locked at night after 10:30.

The evidence shows, without contradiction, that while the show room on Michigan avenue was open in the evening until 9:30 or 10:00 o'clock, the back door of the service station was required to be locked between 5:30 and 6:00 o'clock in the evening. All demonstrating cars were ordered to be in place before the time for locking the door and could not be taken out after that hour without the special permission of the sales manager or manager. This order was posted five or six weeks before April 9, and was known by Smith and the other salesmen and employees and was observed by them. Smith testified that usually demonstrators would go out with the salesmen to make the demonstrations, though on several occasions salesmen demonstrated to customers. These demonstrations by salesmen were always made in the working hours during the day. Smith testified that he never took the car to make a demonstration without Burns' order or permission, and there is no evidence that any other salesman or demonstrator did. Demonstrations were made at night several times, but if a salesman wanted to make a demonstration at 7:00, 7:30 or 8:00 o'clock it was marked in a book and a regular demonstrator was always provided for him.

It is obvious that the use of the plaintiff in error's car by Smith on the night of April 9 and on the morning of April 10 was without the authority of the plaintiff in error. He took the car from the possession of his employer in violation of the employer's express prohibition. His general employment as a salesman gave him no authority to take the car from the station for any purpose, as he well knew. The liability of the owner of an automobile for damages occasioned through its negligent operation by another depends upon the principle of agency. To enable the person injured

to recover from its owner damages caused by the negligent operation of an automobile, the plaintiff must prove that the operation was by the owner, or by his servant in the owner's business and by the owner's authority. The general rule is, that one who is injured by another's negligence must pursue his remedy against the person whose negligence caused the injury. Where, however, the relation of master and servant exists between the person guilty of the negligence and another sought to be held for the resulting damages, the negligenec of the servant may be imputed to the master, and he may be held liable for the resulting damages if the servant guilty of the negligence was at the time acting in the master's business and within the scope of his employment. Outside the scope of his employment the servant is as much a stranger to his master as any third person. (*Johanson* v. *Johnston Printing Co.* 263 Ill. 236; *Oxford* v. *Peter,* 28 id. 434.) Under the circumstances of Clark's call for a demonstrator at 9:30 Saturday night, April 9, neither Smith nor anyone else at the service station was authorized to take out any car. No one could take out a car at that time for any purpose except with the direct permission of Burns or Cerf, and no such permission was obtained. Smith had no more authority than any stranger to take the car, whether he took it for the purpose of demonstrating or of going to the card party. When he took the car out on the street, and at all times until it was returned, his possession was not the lawful possession of an agent of the owner within the scope of his employment but was the unlawful possession of a wrongdoer, and the plaintiff in error was not liable for the acts of the wrongdoer. It was said in *Limpus* v. *London General Omnibus Co.* 1 Hurlst. & C. 526: "It is not universally true that every act done for the interest of the master is done in the course of the employment. A footman might think it for the interest of his master to drive the coach, but no one could say that it was within the scope of the footman's employment and that

the master would be liable for damage resulting from the willful act of the footman in taking charge of the horses." This language was quoted in *Brown* v. *Jarvis Engineering Co.* 166 Mass. 75, in which it was held that the act of a workman employed in the construction of a brick foundation for a printing press in assisting the driver of a van in unloading rolls of paper, which necessarily impeded work on the foundation and caused loss of time to the contractor and wages to the men, was not within the scope of the workman's employment even though the act of assisting in unloading the van was for the purpose of carrying forward the work and for the benefit of the contractor, and therefore the contractor was not liable to the driver of the van for an injury to him caused by the negligence of the workman on the foundation attempting to help him unload.

The rule is well established that the owner of an automobile is not liable for damages caused by its negligent operation by an employee whose possession of the vehicle is without the owner's permission. The relation of master and servant must exist to make the owner liable and the servant must be acting at the time within the scope of his employment. There are many cases in which the rule has been applied. Among them are *Rose* v. *Balfe*, 223 N. Y. 481; *Rolfe* v. *Hewitt*, 227 id. 486; *Goldberg* v. *Borden's Condensed Milk Co.* id. 465; *White Oak Coal Co.* v. *Rivoux*, 88 Ohio St. 13; *Lima Railway Co.* v. *Little*, 67 id. 91; *Riley* v. *Roach*, 168 Mich. 294; *Fleischner* v. *Durgin*, 207 Mass. 435; *Gardiner* v. *Farnum*, 230 id. 193; *Fletcher* v. *Meredith*, 148 Md. 580; *Fisher* v. *Fletcher*, 191 Ind. 529; *Steffen* v. *McNaughton*, 142 Wis. 49; *Danforth* v. *Fisher*, 75 N. H. 111. In the last case it is said that the test to determine whether the master is liable to a stranger is to inquire whether the servant was doing what he was employed to do at the time he caused the injury. If he was, the fact that he was not doing it in the way expected is immaterial, but if at the time he did the act which caused the injury he

was not acting within the scope of his employment the master is not liable. In *Zondler* v. *Foster Manf. and Supply Co.* 277 Pa. 98, it is held that in order to hold the owner of an automobile liable for injuries caused while it is being operated by an employee, not only must it appear that the defendant is the owner of the vehicle and the driver his employee, but also that the vehicle was in use by the driver on the owner's business and with his permission. A master is not liable for a tort committed by his servant while acting without the scope of his employment even though he may be acting in furtherance of the master's interest. *Davis* v. *Price,* 133 Miss. 236.

The defendant in error contends that proof that the plaintiff in error owned the car whose negligent operation caused the accident and the operator was the plaintiff in error's servant constituted *prima facie* evidence that the car was being used in the plaintiff in error's business and it was liable for the injury. It is further contended that the court cannot say, as a matter of law, that the *prima facie* case thus made has been overcome by testimony that the driver was without authority to drive the car, as it is a question for the jury to determine. The question of law presented to the court upon a motion at the close of all the evidence is whether, when all the evidence is considered, together with all reasonable inferences from it in its most favorable aspect to the party against whom the motion is directed, there is a total failure to prove a necessary element of his case. (*Coal Creek Drainage District* v. *Sanitary District,* 336 Ill. 11.) This precludes any examination of the weight of the evidence to determine its preponderance, but requires consideration of the evidence itself introduced on the trial and not merely the statements of the opinion of the Appellate Court as to what facts have been proved.

Different views have been expressed by some of the courts whose decisions have been cited, on the question whether mere ownership of the car and its operation by the

owner's servant show a *prima facie* case of liability of the owner for damages following an accident caused by negligent operation, without proof that the operation was in the master's business and within the scope of the servant's authority. If we assume, however, for this case, (what we do not decide,) that a *prima facie* case is made as claimed by the defendant in error's counsel, it does not follow that the case must necessarily go to the jury, and the motion to direct the verdict did not present a question of law. The contention of the defendant in error is that it is the province of the jury to weigh the testimony of the witnesses, to determine the credibility and weight of the evidence and give it their belief according to their judgment. In support of this contention she relies upon the case of *Shannon* v. *Nightingale,* 321 Ill. 168, in which it was said: "If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense. Evidence contradictory of the plaintiff's will not do it." This language was too unguarded and should be qualified, as should also the statement that "the question arising on this motion [to direct the verdict] is whether there is any evidence to sustain the plaintiff's side of the issue." The question is whether there is evidence to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action. The other language quoted should be modified by the substitution for the words "an affirmative defense" of the words "facts consistent with every fact which the evidence of the plaintiff tends to prove but showing affirmatively a complete defense." This is the situation here. There is no contradiction of the plaintiff's evidence and none of the defendant's. The legal conclusion follows as it did in *Lohr* v. *Barkmann Cartage Co.* 335 Ill. 335, in which the defendant was sued for a personal injury caused by the negligent operation of an au-

tomobile truck which it owned. It was operated by an employee of the defendant. The defense was that the employee at the time of the accident was not acting within the scope of his employment and was therefore not the defendant's agent. The evidence tended to show that the driver having been ordered to take the truck to the defendant's garage, instead of obeying the order went off on a frolic of his own and at the time of the accident was more than four miles from the garage and traveling in another direction. The ownership of the automobile was shown by the plaintiff and the relation of master and servant between its driver and the owner. The evidence introduced by the defendant as to the directions given to the driver, and his disregard of them, showed that he was without the scope of his employment, and it was held that there was no evidence that he was within the scope of his employment. The defendant moved for an instructed verdict in its favor. The motion was denied and the judgment against the defendant was reversed for error in refusing the instruction. It was admitted by the defendant that the driver was its agent on the day of the accident. In regard to the presumption arising from this admission the court said: "Such presumption is not evidence. Presumptions are never indulged where established facts exist. They supply the place of facts. When evidence is produced which is contrary to the presumption, the presumption vanishes entirely. (*Osborne* v. *Osborne*, 325 Ill. 229; 1 Jones' Com. on Evidence, 75.) Whether Schwinnen was in plaintiff in error's employ at the time of the accident depends upon the facts surrounding that occurrence."

From the undisputed evidence Smith was not only without authority to take the automobile, but was absolutely prohibited to do so without obtaining special permission. The master has the right to conduct his business in his own way according to his own rules. His employees have no right to undertake to conduct his business for him in dis-

398

regard of his rules even though they believe it is to his interest for them to do so. Smith was at no time within the scope of his employment from the time he took the car. He was a wrongdoer throughout his possession of the car.

The trial court erred in refusing to instruct the jury to return a verdict for the defendant and in entering judgment on the verdict in favor of the plaintiff, and the Appellate Court erred in affirming the judgment. Both judgments are reversed.                                    *Judgments reversed.*