Grace C. Paulsen, Administratrix of the Estate of William Paulsen, Deceased, Appellee, v. Natalie Cochfield, Appellant.

Gen. No. 8,847.

Opinion filed January 10, 1935.

Rehearing denied February 11, 1935.

KENWORTHY, SHALLBERG & HARPER, of MOLINE, and ELMORE H. STAFFORD, of Rock Island, for appellant.

MARSHALL & MARSHALL, of Rock Island, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

On November 20, 1930, the plaintiff as administratrix of the estate of William Paulsen, her late husband, secured a verdict against the defendant for $9,000, in an action wherein the declaration charges that the decedent was killed as a result of the negligence of the driver of the defendant's automobile in which the decedent was riding as a passenger. A motion for a new trial was made on December 15, 1930, but owing to the illness and subsequent death of the Honorable C. J. Searle, the judge who presided at the trial, the motion was not disposed of until December 30, 1933, when the Honorable Leonard E. Telleen, circuit judge, overruled the motion. Thereupon the defendant made a motion in arrest of the judgment, which was overruled, and judgment was rendered on the verdict. The case appears here on appeal by the defendant to the October Term, 1934, of this court.

Eight assignments of error are urged by the defendant. It is first contended that the court erred in overruling her motion for a directed verdict in her favor made at the close of all the evidence in the case. This contention is based on the defendant's insistence that the plaintiff has not proved that the automobile was being driven by the agent of the defendant as alleged in the declaration, at the time of the accident. This was one of the material allegations of the declaration, denied by appropriate pleas, and the burden was on the plaintiff to prove the alleged fact by legal evidence. It must appear from all the evidence in the case that the said allegation has been established by competent evidence. In a jury trial, the motion to

direct a verdict raises only a question of law respecting the legal sufficiency of the evidence to sustain a verdict against the party making the motion. In the event of an adverse ruling on the motion to direct a verdict, an exception preserves the question of law for the consideration of an appellate tribunal. The submission of a question of fact to the jury does not waive the question of law already passed upon by the court where the rights of the party have been properly preserved. *John Deere Plow Co. v. Carmer,* 350 Ill. 104. Neither the trial court nor the court of review weighs the evidence on motion for a directed verdict. *Post v. Hightower,* 262 Ill. App. 368; *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387.

Although the evidence at the close of the plaintiff's case, including all reasonable inferences from it favorable to the plaintiff, does not justify an instruction for a verdict in favor of the defendant, still, if the defendant introduces uncontradicted evidence of facts, consistent with every fact which the evidence of the plaintiff tends to prove, but showing affirmatively a complete defense, the motion for a directed verdict made at the close of all of the evidence in the case should be allowed. *Nelson v. Stutz Chicago Factory Branch, supra.* In this case the question of law on the motion is: Did the defendant introduce uncontradicted evidence showing a complete affirmative defense as stated in the rule above announced? The burden of proof was not shifted to the defendant to prove that the driver of the automobile was not her agent at the time of the accident.

It is conceded by the defendant that William Paulsen was killed as a result of a collision of the defendant's automobile while he was riding therein. There is evidence in the record tending to prove that the driver of the defendant's automobile was guilty of negligence as charged in the declaration which was

the proximate cause of the decedent's death. The defendant does not urge that the motion to direct a verdict in her favor was erroneously overruled on the ground that there is no such evidence in the record. However, it is not amiss to state that the deceased, on January 21, 1930, was riding in the defendant's automobile which was being driven on the Lincoln Highway toward the east when the collision occurred about six miles west of Geneva, Illinois, at about 3:30 o'clock in the afternoon. The car was occupied by the defendant, her brother, C. W. Laubscher, and the decedent. The occupants of the car had left Rock Island during the morning of that day and they had been riding in the car on the Lincoln Highway from Morrison, Illinois, to the place of the collision. Whether the car was being driven by the agent of the defendant is a matter of serious dispute between the parties to the action, as is above stated. The highway was paved and it was covered with smooth ice which was very slippery. It is not contended that the driver of the automobile did not control and drive the car with due care during the trip except shortly before the accident. The collision occurred near the top of a hill. As the car was being driven up the hill, the driver thereof attempted to pass a farm wagon which was being pulled up the hill by a team of horses driven by one Wilbur Mangerson. The wagon was on the south side of the highway well over to the right side of the road. A Chevrolet automobile driven toward the west appeared over the brow of the hill just after the driver of the defendant's car turned that car toward the north to pass or avoid striking the wagon. The evidence tends to prove that the endeavors of the driver of the defendant's car to prevent a collision with the Chevrolet car caused the defendant's car to skid against the wagon and then to collide with the Chevrolet car. The impact of the automobiles threw the decedent out of

the defendant's car and upon the highway. The Chevrolet immediately caught fire and the decedent was fatally burned by the gasoline which became ignited as a result of the collision.

The declaration consists of six counts, all of which except the third allege that the car of the defendant at the time of the collision was being driven by the agent of the defendant. The third count alleges that the car was then being driven by the defendant. The plaintiff, as part of her case in chief, did not introduce testimony that the defendant was driving the car when the accident occurred. No witness testified that the defendant was then driving the car. The case was tried and it is now submitted to this court on the theory that the car was being driven at the time of the accident by the agent of the defendant. On the matter of the proof that the driver of the defendant's car was the agent of the defendant, the plaintiff introduced no evidence, either in chief or on rebuttal, proving such agency, excepting the facts that the defendant was the owner of the car and present therein when the accident happened. As proving that the driver was the agent of the defendant, the plaintiff relies on her uncontradicted and undisputed proof that the defendant was the owner of the car and present therein when the accident occurred.

The plaintiff cites the cases holding that the proof of ownership of an automobile raises a presumption that the automobile when driven is controlled and driven by the agent of the owner of the car. Included in these citations are the cases of *Howard v. Amerson,* 236 Ill. App. 587; and *Kavale v. Morton Salt Co.,* 242 Ill. App. 205, affirmed 329 Ill. 445. The defendant cites cases from foreign jurisdiction at variance with the rule laid down in the case relied upon by the plaintiff. The authorities are also in conflict on the question whether mere ownership of the car and its operation

by the owner's servant show a prima facie case of liability of the owner for damages following an accident caused by negligent operation, without proof that the operation was in the master's business and within the scope of the servant's authority. *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387. In the case of *Howard v. Amerson, supra,* it is held that proof by the plaintiff that the defendant is the owner of the automobile which caused the injury sued for, while in the hands of another, made out a prima facie case that the driver is the servant of the defendant and acting within the scope of his employment at the time and places the burden of proving the contrary on the defendant. However, it does not follow that if a prima facie case is made by the plaintiff and the defendant introduces evidence counter to the prima facie case, that the cause must necessarily be submitted to the jury and that the motion to direct a verdict at the close of all the evidence does not present a question of law. *Nelson v. Stutz Chicago Factory Branch, supra.* We adhere to the rule laid down in *Howard v. Amerson,* 236 Ill. App. 587, that proof of the ownership of the car raises a presumption that the person operating the car is the agent of the owner and acting within the scope of his agency. The consequences of the presumption, or inference (and in this State there is no difference in the meaning of the two terms used as here—*Ohio Building Safety Vault Co. v. Industrial Board,* 277 Ill. 96) was to make out a prima facie case for the plaintiff. As is well said by the Editor of the Sixteenth Edition of Greenleaf on Evidence, Vol. 1, p. 102, quoting from Thayer's Preliminary Treatise on Evidence: ''The essential character and operation of presumptions, so far as the law of evidence is concerned, is in all cases the same, whether they be called by one name or the other; that is to say, they throw upon the party against whom they work the duty of

going forward with the evidence; and this operation is all their effect, regarded merely in their character as presumptions.'' After a prima facie case was made for the plaintiff, the defendant could take the risk of submitting the case to the jury without showing an affirmative defense, or introducing evidence showing a complete affirmative defense. Such affirmative defenses have been made concerning automobile accident cases where the question of the agency of the driver is involved. *Nelson v. Stutz Chicago Factory Branch, supra; Trust v. Chicago Motor Club,* 276 Ill. App. 289; *Rupp v. Walgreen Co.,* 270 Ill. App. 346; *United Breweries Co. v. Bass,* 121 Ill. App. 299.

A presumption does not shift the burden of proof onto the defendant, although its effect is to make out a prima facie case for the plaintiff. *Stephens v. Hoffman,* 275 Ill. 497; *Morrison v. Flowers,* 308 Ill. 189. The affirmative defense of the defendant involved a negative; that is, proof that the driver of the car at the time of the accident was not her agent. The defendant was compelled by rule of law to go forward with evidence or suffer the result of a prima facie case made against her by the plaintiff.

The motion made by the defendant at the close of the plaintiff's case in chief was overruled by the court. The defendant thereupon introduced evidence to contradict and explain the prima facie case made by the plaintiff's proof, which counter evidence shows an uncontradicted and complete affirmative defense. Rebuttal evidence was introduced by the plaintiff. All this evidence will now be considered.

The trial court held that the plaintiff appearing as the personal representative of the decedent and the defendant defending against the representative were both disqualified as witnesses. C. W. Laubscher testified substantially as follows: That he is a brother of the defendant, and that he resided in Waterloo, Iowa, on January 21, 1930; that the defendant lived

in Rock Island; that he did not live with her; that he had never been employed by her nor worked for her; that he came to Rock Island to visit his sister and was there on Saturday and Sunday preceding the accident; that he was on his way to Chicago; that on Saturday night, accompanied by his sister, he drove his sister's automobile to the down town district of Rock Island, parked the car, and went shopping with the defendant; that when they returned to the car the decedent (Paulsen) was by the car waiting; that Paulsen asked the witness what he was doing in Rock Island and he replied that he was on his way to Chicago; that Paulsen then inquired if he was driving and witness replied that he left his car at Waterloo and that he was taking the train on account of the bad condition of the roads. Paulsen stated that he had business in Chicago and that he had to be there by Tuesday morning and that he must go on Monday. He told the witness that the road conditions in Illinois were not like those in Iowa and if Laubscher would borrow his sister's car they could drive together to Chicago on Monday. Laubscher replied that he would think the matter over. On Sunday afternoon Paulsen came to the home of the defendant and he and Laubscher had another conversation about the proposed trip. Paulsen inquired if Laubscher had made up his mind to drive to Chicago on Monday. Laubscher stated that because of his not feeling well and on account of road conditions, he did not consider it advisable to drive to Chicago. Paulsen told witness that he would assure the condition of the road.

Laubscher further testified as follows: Between nine and ten o'clock on Monday morning Paulsen came to the home of the defendant; that Paulsen had, either on Saturday or Sunday, requested the defendant to let Laubscher and Paulsen have her car to drive to Chicago, and the defendant had stated that she had no objection to them using the car; that Laubscher

told Paulsen on Monday morning that owing to the cold weather and the road conditions he had decided to go to Chicago on the train; that Paulsen stated that he had been informed by a traveling man that there was a good track and the road between Rock Island and Chicago was all right; that Laubscher and Paulsen asked the defendant to go with them as far as Elgin, where she could visit some of her relatives and they would call for her on their return trip; that the defendant went upstairs to prepare for the trip and Paulsen drove her car out of the garage and waited in the car on the street for Laubscher and the defendant.

Laubscher testified further, that, when he and the defendant came to the car, Paulsen moved over from under the wheel of the car and Laubscher started driving; that Laubscher did not know the way from Rock Island to the Lincoln Highway and Paulsen directed the way through Rock Island to Morrison, which is on the Lincoln Highway; that they left Rock Island a little before ten o'clock and arrived in Sterling about noon, where they had dinner at a restaurant; that Paulsen paid for the dinners; that they bought gasoline for the car twice before arriving at the place of the accident, once at a farmhouse and again at a filling station; that Paulsen paid for the gasoline bought at the farmhouse and Laubscher paid for the gasoline purchased at the filling station; that the road was very slick, a glare of ice and very little snow, with no ruts; that a short time before the accident, Paulsen complained about his feet being cold and he exchanged seats with the defendant who had been riding in the rear seat; that Paulsen requested Laubscher to drive faster and explained that he expected to meet some parties in Chicago and he would like to be there by seven o'clock; that Laubscher told him they were making as good speed as possible.

Laubscher testified further: That he had been in the automobile business since 1916 and that he had driven cars constantly; that on January 21, 1930, he was able to estimate approximately the speed at which he was traveling when driving the car; that he glanced occasionally at the speedometer on the car; that when Paulsen requested him to drive faster, which was about 30 minutes before the accident, the speed of the car was 20 or 25 miles an hour; that Paulsen again asked Laubscher to drive faster, but that he used his own judgment about the speed of the car; that the car was a Willys-Knight coupe sedan for carrying four persons; that he drove the car between 30 and 35 miles an hour at times, and on one occasion drove the car for a "spurt" on a level stretch of the road at 40 miles per hour.

On cross-examination Laubscher testified that he was working for the Sherbrick-Kelly Co., distributors of Willys-Overland products, and that he had been in its employ since 1915; that he was still employed by that company. He stated fully as to the business reasons why he was on his way to Chicago. His cross-examination is consistent with his testimony on direct examination.

The testimony of one uncontradicted and unimpeached witness tending to overcome a prima facie case cannot be ignored by the court or jury, unless such testimony from its nature is not credible. *Stephens v. Hoffman,* 275 Ill. 497. A prima facie case, based solely on an inference, or presumption, does not preclude the withdrawal of the case from the jury after all the evidence has been submitted. *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387; *Judson v. Bee Hive Auto Service Co.,* 136 Ore. 1, 294 Pac. 588, 297 Pac. 1050, 74 A. L. R. 944; *Kazee v. Kansas City Life Ins. Co.* (Mo. App.), 217 S. W. 339. Whether the evidence, with all legitimate and natural infer-

ences to be drawn therefrom, necessarily leads to a certain conclusion, is a question of law. *Ferrero v. National Council of Knights and Ladies of Security,* 309 Ill. 476. Ordinarily, whether an inference or presumption has been overcome is a question for the jury, but if the evidence is of such a character that but one reasonable deduction can be made therefrom, the court may so declare as a matter of law. *Judson v. Bee Hive Auto Service Co., supra.*

The distance from Rock Island to the place of the accident by way of Morrison is about 137 miles and we find nothing inherently incredible or improbable in the testimony of the witness Laubscher to justify us in saying that it is false. Nor is his alleged interest in the result of the trial, because of the fact that he is the brother of the defendant, of such a character or nature as to cause the rejection of his testimony. *Nelson v. Stutz Chicago Factory Branch, supra; United Breweries Co. v. Bass,* 121 Ill. App. 299; *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883. In *Anderson v. Irwin,* 101 Ill. 411, a Mr. Justice Mulkey states: "The law is intended to be practical in its application to the varied transactions and circumstances which go to make up the affairs of life and which are constantly giving rise to legal controversies that have to be settled in courts of justice. Indeed, most of the rules of evidence have been established with direct reference to this principle." It has been held by our Supreme Court that where the law casts upon a party the burden of proving a negative, full and complete proof in rebuttal of presumptions is not required, but in order to remove the presumption it is necessary that proof should be produced sufficient to render the existence of the negative probable. *Rexroth v. Schein,* 206 Ill. 80; *City of Beardstown v. City of Virginia,* 76 Ill. 34; *Behrensmeyer v. Kreitz,* 135 Ill. 591; *Prentice v. Crane,* 234 Ill. 302; *Vigus v. O'Bannon,* 118 Ill. 334. The facts

in this case pertaining to the agency of the driver of the car lie peculiarly within the knowledge of the defendant, and full and clear disclosure of such facts by the defendant should be required to establish an affirmative defense. Jones on Evidence (2d Ed.), secs. 180, 181.

The evidence of the witness Laubscher up to this stage of the trial being uncontradicted would not justify men of ordinary reason and fairness, who understood the law as herein stated, in affirming that the plaintiff had proved that Laubscher while driving the car of the defendant was acting as her agent in and about her business. The presumption of agency arising from the proof of the defendant's ownership of the car has spent its force as it is opposed by facts proved by the evidence. There was no longer a rule of law requiring the jury to find according to the presumption. The prima facie case of the plaintiff had been overcome by evidence. Under such circumstances a presumption is not evidence; there is no conflict in the evidence when the presumption is contradicted by facts proved by uncontradicted and credible evidence to the presumption. *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387; *United Breweries Co. v. Bass,* 121 Ill. App. 299; *Judson v. Bee Hive Auto Service Co.,* 136 Ore. 1, 297 Pac. 1050, 74 A. L. R. 944; *Tullis v. Blue,* 216 Ala. 577, 114 So. 185; *Toranto v. Hattaway,* 219 Ala. 520, 122 So. 816; *Graves v. Colwell,* 90 Ill. 612; *Brown v. Brown,* 329 Ill. 198; *Sielbeck v. Grothman,* 248 Ill. 435; *Gorden v. Gorden,* 283 Ill. 182; *Lohr v. Barkmann Cartage Co.,* 335 Ill. 335; *Pennsylvania R. Co. v. Lord,* 159 Md. 518, 151 Atl. 400; *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883.

In rebuttal of the testimony of Laubscher, the plaintiff introduced the testimony of John Kinney. This witness testified that his business was that of hauling coal and he had been so engaged for about four years;

that he knew Paulsen when he was alive and remembered the time of his death; that he also knew the defendant when he saw her; that on January 21, 1930, he was at a coal bank near Silvis getting a load of coal; that while driving his coal truck back to Rock Island when he was near Silvis he saw Paulsen in a car headed east; that the defendant was driving the car with Paulsen in the front seat of the car and a man in the rear seat; that this was between 11 and 12 o'clock; that it was a Knight car and he knew the car; that he gave just a passing glance at the car; that he could see in the car and recognized who was driving it.

While the testimony of Kinney contradicts the testimony of Laubscher that he drove the car all the way from Rock Island to Morrison, it in nowise proves or tends to prove that Laubscher at the time of the accident was not driving the car; Silvis is about 12 to 15 miles north of Rock Island. It could be said only by conjecture, if at all, from the testimony of Kinney that Laubscher was not driving the car at the time of the collision. There are no other facts in evidence from which an inference could be drawn as a matter of fact that Laubscher at the time of the collision was driving the car of the defendant as her agent.

We have considered the plaintiff's argument that the defendant being present in the car at the time of the collision raises a presumption that the driver of the car was her agent (which we do not decide) and also that it was her duty to control the driver of the car so that he would use due care driving it. If there is such a presumption, it was overcome by the evidence. The trip at best was a perilous undertaking and the accident happened suddenly. *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326, 2 A. L. R. 883.

There is no legal evidence in the record proving or tending to prove the allegation of the declaration

that the car at the time of the collision which resulted in the death of the plaintiff's intestate was then being driven by the agent of the defendant in and about her business. The case should be reversed on the ground that the trial court erred in not giving the instruction for a directed verdict as asked by the defendant at the close of all the evidence in the case.

The clerk of this court will insert in the judgment of the court the following: The court finds that there is no legal evidence in the case proving, or tending to prove by legitimate inference the material allegation of the declaration, namely, that the driver of the defendant's automobile at the time of the collision with the other automobile (which collision resulted in the death of the plaintiff's intestate) was driven and controlled by the agent or servant of the defendant in and about the business of the defendant.

*Judgment reversed.*