JOSEPH H. D. BEAUCAGE *vs.* WILLIAM J. MERCER.
JOHN A. GILBERT *vs.* SAME.

Berkshire.    September 13, 1910. — October 19, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Contributory, Imputed.  *Agency*, Scope of authority, Existence of relation.
*Evidence*, Relevancy and materiality, Opinion.

Where two persons suffer personal injuries while they are engaged in a joint enterprise, if the negligence of one of them contributed to the accident which caused their injuries, such negligence is a bar to an action brought by the other against a third person for such injuries, provided such contributory negligence was in a matter within the scope of the joint enterprise.

In actions of tort by two plaintiffs for personal injuries sustained in the same accident, when they were together in a motor car upon a trip, the expenses of which they had agreed to share, it appeared that the defendant was the proprietor of a garage, whose business included towing disabled cars for hire, that the car in which the plaintiffs were making their trip became disabled, and that they sent to the defendant's garage for a tow, that a person was sent by the defendant with a towing car, to which he hitched the car of the plaintiffs by a

rope, and that while the towing was in progress at an alleged high rate of speed the car of the plaintiffs ran or was thrown against a telephone pole, causing the plaintiffs' injuries. The plaintiffs sought to hold the defendant liable on two grounds, first, because of the negligent manner in which the cars were hitched together, and, second, because of negligence in the management of the towing, either in the way of excessive speed or otherwise. The evidence was conflicting, and it could be inferred from the record that there was sufficient evidence to warrant a finding in favor of either party as to each of these kinds of negligence. There also was evidence on which it could be found that one of the plaintiffs protested against the manner of hitching the cars together as unsafe "and with a full appreciation and knowledge of the dangers involved in riding in the machine under those circumstances." The judge instructed the jury in substance to find for the defendant if one of the plaintiffs knew and appreciated the risk attendant upon the negligent hitching. The jury returned verdicts for the defendant. *Held,* that the instruction of the judge was erroneous, because no appreciation of the risk of the manner of hitching by one of the plaintiffs could affect his right or that of the other plaintiff to recover for negligence in the operation of the cars, to which alone the jury might have found the accident to have been due.

If the authorized agent of the proprietor of a garage, whose business includes towing disabled motor cars for hire, when he is asked to send a towing car to tow a disabled car, sends a man out with a towing car to do this, giving him authority to hire as many men to help him as he thinks necessary, and the man thus sent, thinking his brother necessary, takes him as a helper, the brother while engaged in this employment is the servant of the proprietor of the garage, whether he actually is needed or not.

For the purpose of showing that an automobile was moving at a high rate of speed, it is not proper to ask a witness whether the coming of the machine aroused any concern in him, because the fact that a person is concerned or frightened by the speed of a vehicle furnishes no trustworthy guide as to the rate of speed.

For the purpose of showing that the person who answered a certain telephone call at a garage was the agent of the proprietor of the garage, it is not proper to ask a witness whether he can state "who was in charge there," it being the province of the jury to draw inferences as to the scope of the agency of the person in question from the testimony of the witness as to what he saw such person do.

TWO ACTIONS OF TORT against the proprietor of a garage, the first by Joseph H. D. Beaucage for injuries to his person and to an automobile belonging to him, and the second by John A. Gilbert for personal injuries, all sustained on the Dalton Road in Pittsfield on October 10, 1909. Writs dated October 21, 1909.

In the Superior Court the cases were tried together before *Crosby,* J. The following facts were stated in the bill of exceptions as having appeared in evidence: As on several former occasions, both of the plaintiffs were in Beaucage's automobile in the daytime of October 10, 1909, taking a drive together,

having agreed to share equally the expenses of the trip. The automobile, which was kept at the defendant's garage, became disabled on the Dalton Road, over which street cars run half hourly into Pittsfield and past the defendant's garage. The plaintiff Beaucage sent one Villeneuve, who offered assistance, to telephone to the defendant's garage for a tow. The defendant in connection with his garage as a part of the business towed for hire machines requiring that service, and advertised his place of business as "never closed, competent attendants day or night."

The evidence was conflicting as to whether one Eagen, who at the garage answered Villeneuve on the telephone, had authority to send out tows for the defendant, and, while there was evidence that Eagen told Villeneuve some one would come out, there also was evidence that Samuel J. Tremblay, the man sent, who is mentioned later, was not connected with the garage although he was in the garage at the time, and that he volunteered to tow the plaintiffs in. All these matters of agency were submitted to the jury under instructions from the judge which were not excepted to, except in the matter of the exclusion of a question asked one Revort as hereinafter stated, and in the matter of instructions stated later in regard to the employment of Ovelia Tremblay, who was a brother of Samuel J. Tremblay and who went with him and assisted in the towing.

Four men, namely, Samuel J. Tremblay, Ovelia Tremblay and two others, came out in an automobile which was used to tow Beaucage's automobile in. One of the four, Samuel J. Tremblay, ran the towing automobile, and Ovelia Tremblay took the steering wheel of Beaucage's car, Beaucage sitting on the other front seat of his car and Gilbert sitting in the rear seat of it. There was no power in the Beaucage car. The evidence was conflicting as to whether Ovelia Tremblay was directed to take the steering wheel of Beaucage's car by Samuel J. Tremblay or by Beaucage.

The towing rope was hitched crossways from the rear of the towing car at one side back to the front of Beaucage's car at the other side. The cars went along safely for a time, but, when entering the thickly settled portion of Pittsfield near intersecting streets, the Beaucage car ran or was thrown against a telephone

pole eight feet outside the gutter of the street away from the travelled way, and the injuries to the automobile and the personal injuries sued for were sustained. Witnesses variously stated the speed of the cars at the time of the accident as being from thirty-five miles an hour, as given by one witness, to twelve or fourteen miles as stated by one of the Tremblays. The judge gave proper instructions regarding the effect of the rate of speed.

One Crowell, a witness of the accident called for the plaintiffs, was asked on direct examination in regard to the automobile at the time of the accident, " When you saw them coming down there did it arouse any concern in you or didn't it? " This question was objected to, and the objection was sustained. The plaintiff excepted, and the judge said to the plaintiff's counsel, " I will ask you again, so it may appear on the record, for what purpose do you offer the evidence? " The plaintiff's counsel replied, " To show the excessive speed, that was frightening every one who saw it." The judge then asked, " Do you claim that because somebody saw an automobile coming along and was frightened that that is evidence it was going at excessive speed?" and the plaintiff's counsel replied, " I claim if five or six saw it and were frightened — " The judge excluded the evidence subject to the plaintiff's exception.

One Murgittroyd, a witness of the accident called for the plaintiffs, was asked on direct examination, in regard to the automobile at the time of the accident, " As you saw them coming down the hill were you filled with concern or not? " This was objected to, and the objection was sustained by the judge. The plaintiff excepted.

One Revort, an employee of the defendant at the time of the accident, called for the plaintiffs, in connection with proof of the agency of Eagen, who answered the telephone at the garage, was asked on direct examination, " Can you state who was in charge there? " This was objected to, and the objection was sustained by the judge. The plaintiff excepted.

In charging the jury the judge instructed them as follows:

" If you should find that there was any negligence on the part of either of these plaintiffs and that such negligence contributed to their injuries neither of them could recover. I instruct you

as a matter of law that if one was negligent the negligence of that plaintiff is to be imputed to the other, in other words, if you should find that Beaucage was negligent in something which he did or omitted to do, which contributed to this accident, then neither he nor Gilbert could recover and Beaucage's negligence would be imputed to Gilbert." The plaintiffs excepted to this portion of the charge.

The judge further instructed the jury as follows:

" There is some evidence in this case tending to show that, when the persons who were sent out to assist the plaintiffs arrived and after the hitch had been made which has been described, Beaucage protested and objected to the way in which it was done, and said that it was not safe and if you should be satisfied that he did that, made that objection and he made it with a full appreciation and knowledge of the dangers which were involved in riding in the machine under those circumstances, then neither he nor the plaintiff Gilbert would be entitled to recover; but in considering and deciding that subject it would not necessarily follow that, because Beaucage objected or protested against the manner in which the work was done, he was negligent as a matter of law. It would not conclusively follow that he was negligent in riding in the machine after that time, but it is evidence for your consideration and on the evidence it appears that he knew, that he had knowledge of the way in which this work was being done, the way in which this automobile of his was being attached to the other one. But in determining whether he is chargeable with the negligence in that respect, the question is whether he appreciated the risk and the danger which were involved in riding under those circumstances. If he did, if he not only knew it, but he fully appreciated all the risks involved and knew as much about it as anybody, then he could not recover because his own negligence was under such circumstances as would be said to have contributed to his injury. On the other hand, if you should find that although he protested against yet he did not fully appreciate the risk, and relied upon any statements or representations made by the men there that they were sent to do the job and they proposed to do it, and you should find that Beaucage in continuing to ride in the automobile did not fully appreciate the risk but relied upon the representa--

tions made, and if you should find that he acted with ordinary prudence and care in relying upon such representations, then it would not follow that his acts in continuing to ride in the automobile would as a matter of law preclude him from recovery."

The plaintiffs also excepted to a portion of the charge which related to the employment of Ovelia Tremblay.

The jury returned a verdict for the defendant in each of the cases; and the plaintiffs alleged exceptions.

*J. Barker*, for the plaintiffs.

*J. Fallon*, for the defendant.

HAMMOND, J.   In dealing with these exceptions we are embarrassed by the meagre report of the evidence as to the precise manner in which the accident occurred, and by the disconnected way in which the parts of the charge deemed material are reported; and we proceed to the consideration of the questions of law involved not without apprehension lest something may have been omitted which, if inserted, might have materially changed the conclusion to which we have come.

As to the general doctrine of contributory and imputable negligence the jury were instructed as follows: " If you should find that there was any negligence on the part of either of these plaintiffs and that such negligence contributed to their injuries neither of them could recover.   I instruct you as a matter of law that if one was negligent the negligence of that plaintiff is to be imputed to the other, in other words, if you should find that Beaucage was negligent in something which he did or omitted to do, which contributed to this accident, then neither he nor Gilbert could recover and Beaucage's negligence would be imputed to Gilbert."

To this ruling the plaintiffs excepted.

The record recites that " as on several former occasions, both plaintiffs were in Beaucage's automobile in the daytime . . . taking a ride together, having agreed to share equally the expenses of the trip.   The automobile, which was being kept at the defendant's garage, became disabled on the Dalton Road, so called, over which street cars run half hourly into Pittsfield and past the defendant's garage."   Whether under all the circumstances of this case the agreement that the expenses should be shared equally was sufficient in law to make the ride a joint

enterprise (see *Adams* v. *Swift*, 172 Mass. 521), and if it was, whether the joint enterprise was in law stopped when the car became disabled so that Beaucage in telephoning for assistance was acting in his sole capacity as the owner of the car, or whether in law it continued until the car was returned, or whether there was conflicting evidence so that these were all questions for the jury, the record does not clearly show.

The trial, however, seems to have proceeded upon the theory that the plaintiffs were engaged in a common enterprise, and that it still was in force at the time of the accident. So long as the joint enterprise was in force, the contributory negligence of one would bar a recovery by either, provided always the negligence was in a matter within the scope of the joint agreement; and if that is to be regarded as the meaning of the instruction then it was correct. While the record is not very clear as to whether this omission to put in the qualifying clause above named was as applied to the evidence prejudicial to the plaintiffs, we are inclined to assume in favor of the defendants that it was not.

The jury were further instructed in substance that if, after the cars had been hitched together in the manner described in the evidence, the plaintiff Beaucage "protested and objected to the way in which it was done, and said that it was not safe," and if he made this objection " with a full appreciation and knowledge of the dangers . . . involved in riding in the machine under those circumstances, then neither he nor the plaintiff Gilbert would be entitled to recover." Upon this point the judge further proceeded as follows : " The question is whether he appreciated the risk and the danger which was involved in riding under those circumstances. If he did, if he not only knew it, but he fully appreciated all the risks involved, . . . then he could not recover because his own negligence was under such circumstances as would be said to have contributed to his injury. On the other hand, if you should find that although he protested against yet he did not fully appreciate the risk, and relied upon any statements . . . made by the men there that they were sent to do the job and they proposed to do it . . . and if you should find that he [Beaucage] acted with ordinary prudence and care in relying upon such representations, then it would not follow

that his acts in continuing to ride in the automobile would as a matter of law preclude him from recovery."

To this ruling the plaintiffs excepted.

It is plain from the record that the negligence with which the plaintiffs charged the defendant was twofold, first, in the manner in which the cars were hitched together, and second, in the manner in which the towing car was managed, in the way of excessive speed or otherwise. And the case was submitted to the jury with instructions (so far as respected the negligence of the defendant) that the defendant would be liable if negligent either in the way in which the disabled car was hitched to the towing car or in the operation of the cars after they were hitched. The whole question whether there was negligence in either of those particulars was left to the jury; and it must be inferred that the evidence was sufficient to warrant a finding in favor of either party as to either kind of negligence. In this state of the evidence these instructions were given. Under them the jury were in substance instructed to find for the defendant if the plaintiffs knew and appreciated the dangers and risk attendant upon the negligent hitching. The effect of this instruction was to authorize the jury to find for the defendant even if the accident was due not to the defective hitching, but solely to the manner in which the towing car was managed. The instruction therefore was erroneous and the plaintiffs' exception to it must be sustained.

The instruction as to the agency of Ovelia Tremblay is somewhat vague and apparently misleading. Whether he was the servant of the defendant depended upon the authority given directly or indirectly by the defendant to the person who hired him, and not necessarily upon the question whether he was reasonably needed. If, for instance, the authority real and apparent of Eagen was limited to the selection of only the necessary number of men and he selected more, then the surplus men could not be regarded as the servants of the defendant; but if Eagen was empowered to send as many men as he thought necessary and acting under such authority he sent such men as he thought necessary but more than in fact were necessary, or if he was empowered to send as many men as he pleased and sent more than were necessary, in either case all the men so

sent would be the servants of the defendant whether or not they were in fact needed. And to apply the principle directly to the employment of Ovelia Tremblay, if Eagen, having authority from the defendant, sent Samuel J. Tremblay out to this work with authority to hire as many men to help him as he thought necessary, and Samuel, thinking his brother Ovelia necessary, took him as a helper, then would Ovelia be the agent of the defendant, whether actually needed or not. Further illustration of the application of this principle is unnecessary.

The questions put to the witnesses Crowell and Murgittroyd were properly excluded. The fact that some one is " concerned " or frightened by the speed of a vehicle furnishes no reliable guide as to the rate of speed.

The question put to the witness Revort was also properly excluded. His idea of the scope of the agency of Eagen is not shown to have been derived from any other source than his knowledge of what he had seen Eagen do; and while the plaintiffs were entitled to have him tell what he had seen Eagen do, they were not entitled to have him state the inference he drew therefrom as to the scope of the agency. It was for the jury and not for him to draw the inferences. *Short Mountain Coal Co.* v. *Hardy*, 114 Mass. 197, 213. *Providence Tool Co.* v. *United States Manuf. Co.* 120 Mass. 35.

Inasmuch as the verdict was for the defendant on the question of liability, the instructions as to damages become immaterial.

*Exceptions in each case sustained.*