(No. 23976.—

GLADYS M. GRUBB, Appellee, *vs.* THE ILLINOIS TERMINAL COMPANY, Appellant.

*Opinion filed April 16, 1937—Rehearing denied June 3, 1937.*

GRAHAM & GRAHAM, (E. B. HAMILTON, of counsel,) for appellant.

A. M. FITZGERALD, and L. W. ENSEL, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on leave to appeal granted to review the judgment of the Appellate Court for the Third District affirming the judgment of the circuit court of Sangamon county in the sum of $10,000. The action was for personal injuries suffered by the appellee in a collision between the automobile in which she was riding and an electric train of the appellant. The complaint, in its several counts, charges that on April 7, 1934, while the plaintiff was in the exercise of reasonable care for her own safety, the defendant, through the carelessness and negligence of its servants so drove and managed its electric train as to cause a collision between it and the car in which the plaintiff was riding. Excessive speed and failure to give warning signals are among the charges. The defense was a denial of negligence and an allegation of contributory negligence on the part of the plaintiff.

The accident occurred on U. S. Route 66 just south of Springfield at a point where the appellant's railroad crosses the pavement at right angles and at grade. The highway at this point is level. The pavement has a width of 20 feet. The railroad right-of-way for a considerable distance east of the crossing is level. A short distance west of the pavement it rises at about a two per cent grade to the top of a viaduct some 1400 feet west of the road. Electric flash signals were installed at this crossing. Ap-

pellee's car was proceeding north toward Springfield. As one approaches this crossing from the south there are buildings along the west side of the highway. The first building south of the track is a two-story residence located about 47 feet south of the track and 74 feet from the east edge of the pavement. About 20 feet south of this building is another two-story house on about the same building line. There is also a filling station about 200 feet south of the railroad track.

The evidence shows that the automobile in which appellee was riding was in good mechanical condition. The train was of a tangerine color and consisted of three cars. In the car with appellee were two of her sisters, Bonnie and Dorothea. The latter was driving. The car in which they were riding ran into the side of the first car of the electric train at about the middle of that car. From the impact it was thrown against the standard on which the warning flash light was constructed and broke it off. Dorothea was killed and appellee was badly injured. At the close of the plaintiff's evidence, and at the close of all the evidence, appellant moved that the court instruct the jury to find the defendant not guilty. The latter of these motions was denied after the return of the verdict.

Appellant here urges that the trial court erred in not granting appellant's motion to instruct the jury to return a verdict of not guilty; that there is no evidence on which to base a verdict of guilty and that the court erred in admitting evidence and instructing the jury. Appellant contends, in support of its claim that the trial court should have instructed the jury, that the evidence showed appellee guilty of contributory negligence as a matter of law, whether she be considered a guest of the driver, or one engaged in a joint enterprise. There is much conflict in the evidence as to the speed of the automobile and that of the train, the former being put by various witnesses at from 20 to 50 miles per hour, and the latter from 20 to 60 miles per hour.

There is also sharp dispute as to the sounding of the warning as the crossing was approached. Appellee and her sister testified that no horn or whistle was sounded. A large number of persons testified to having heard the horn or whistle sounded as the train approached the crossing. Appellee and her sister and others also testified that the flash signal on the south side of the railroad was not operating. Two witnesses testified on behalf of the defendant that they saw it operating when trains were approaching that morning. The accident occurred at 11:30 A. M. on a bright day.

It is not the province of this court to weigh the testimony, and in determining whether the defendant had a right to an instruction to the jury at the close of all the evidence, the question is, whether the plaintiff's evidence tends to support the charge of negligence on the part of the defendant and due care on her part. She and her sister testified that as they approached the crossing each looked east and saw no train. Then all three of the occupants of the car looked west and the deceased sister said that nothing was coming from that direction. Appellee testified that she then said she also did not think so because the lights were not working. She testified that they approached the crossing at about 20 miles per hour and continued at that rate of speed until the automobile hit the train. Appellee testified she did not see the train at any time; that after passing the filling station 200 feet south she looked west and that they looked west again between the filling station and the railroad track; that she could not locate just where it was that she looked the second time but that it was a place where they could look westward and see the track.

The location of the buildings along the highway as indicated on a scale plat in evidence, shows that at a point 50 feet south of the crossing a clear view is had past the first dwelling on the south side of the track for a distance of 450 feet and that at 75 feet south of the crossing anyone

looking west could see the track for a distance of 175 feet. At a point 100 feet south of the track a glance westward would show the track for a distance of 112 feet. It is a matter of common knowledge that a small automobile of the type here involved, when going at the rate of 20 miles an hour, with brake mechanism in good condition, can be stopped within a few feet. It is also a matter of common knowledge that in broad daylight with the sun shining directly upon one of the ordinary flash warning signals, the brilliance of the flash, and therefore the efficiency of the signal, is much diminished.

Counsel for appellee argue that where a flash or wig-wag signal has been established, one about to cross the railroad track has a right to rely on the fact that the signal is not indicating danger and to assume therefore that no train is coming; that the traveler has a right to be guided by the warning usually employed and the fact that it was not flashing, and where he, relying on that fact, relaxes his usual caution, he cannot be held guilty of contributory negligence because of such reliance. Counsel for appellee rely on *Wabash Railway Co.* v. *Walczak,* 49 Fed. (2d) (Mich.) 763, as supporting the contention that the fact that a flasher signal is not flashing is an invitation to proceed over the crossing. The facts in that case differ so definitely from those before us that the case can scarcely be said to be persuasive. There the driver of a car, about to cross a railroad right-of-way, stopped on reaching the first of four tracks, and all occupants testified that they looked and listened. The testimony was in dispute as to the presence of box cars on the first and second tracks, which were said to be an obstruction to the view of the approaching train. The flasher signal was manually operated by a towerman and there was no serious contention by the railroad company that the flasher was working at the time the automobile stopped. In passing upon the question whether it was error to refuse to direct a verdict the court said: "Forty-six feet may be consid-

ered as a comparatively long distance when it is traveled on foot or even by horse-drawn vehicles. It is a comparatively short distance when traveled by an automobile. This court has repeatedly held that open gates, the absence of a customary watchman, or the failure of crossing signal to operate, lessened the otherwise imperative duty of the traveler to stop, look, and listen, and was the practical equivalent of an invitation to cross. [Citing cases.] Practically all of the above cases recognize an obligation upon the part of the traveler to continue in the exercise of ordinary care throughout the crossing journey but it is the negligence of the plaintiff himself which alone can defeat recovery on the ground of contributory negligence."

In *Silvey* v. *Lehigh and Northeastern Railway Co.* 62 Fed. (2d) 71, it was conceded that the automatic wigwag signal was not working. The automobile stopped 15 feet from the track and, due to a curve, a train could only be seen 200 feet at that point. No whistle was blown or bell rung and, starting in low speed, the automobile was struck by a train going 45 miles an hour. It was held, and rightly so, that the question of contributory negligence was for the jury.

The Federal rule governing the duty of one approaching a railroad crossing equipped with gates or flasher signals, though declaring there is an implied invitation to proceed over a crossing which has open gates or a flasher not operating, where the traveler is unaware that such danger signal is not operating at all times, and that such constitutes an implied assurance that no train is approaching, which the traveler may, to some extent, rely upon, also declares, "but of course he still has a duty of doing what a prudent man would do under like circumstances." *Canadian Pacific Railway Co.* v. *Slayton,* 29 Fed. (2d) 687; *Grand Trunk Railroad Co.* v. *Ives,* 144 U. S. 408, 36 L. ed. 485; *B. & P. Railroad Co.* v. *Landrigan,* 191 U. S. 461, 48 L. ed. 262.

In *Lockett* v. *Grand Trunk Railroad Co.* 277 Mich. 219, 261 N. W. 306, the facts were similar to those in the case before us except that occupants of the car, other than the driver, were admittedly guests of the driver. The crossing was protected by signal lights. The time was between 12:30 and 1:00 P. M. on a bright day. The testimony was, that as the car approached, the signal lights were not working. Proceeding to the first of five parallel tracks the driver stopped, looked and listened for an approaching train. Her view was obstructed by a box car on the first track limiting her view to about 200 feet. Not seeing or hearing anything she proceeded in low speed across the tracks without again looking. The car was struck on the fourth track by defendant's train. After crossing the first track there was a clear view of the tracks and the driver would have observed the approaching train, had she looked to the north at any time, while traveling 37.5 feet from the first track to the point of collision. The important question in the case was whether plaintiffs were guilty of contributory negligence. The court reiterates the rule that a traveler, in such circumstances, is guilty of contributory negligence when he fails to stop and look for oncoming trains at a railroad crossing, as announced in *Baltimore and Ohio Railroad Co.* v. *Goodman,* 275 U. S. 66, 72, L. ed. 167, and in *Pekora* v. *Wabash Railway Co.* 292 U. S. 98, 78 L. ed. 1149, and holds that a traveler approaching a protected crossing is entitled to place some reliance upon the indication of safety which the silence of the signals implies, and that the degree of care required of one approaching a crossing under those circumstances is only that which an ordinarily prudent man would use under such circumstances; that whether proper care has been exercised under such circumstances is ordinarily, but not always, a jury question; that whether contributory negligence is a question of law for the court, or one of fact for the jury, depends upon the circumstances of each particular case. In

holding that the driver was in that case guilty of contributory negligence the court found that no circumstances were shown which could have prevented the driver seeing the approaching train had she looked after arriving in the safety zone of 37.5 feet in which her view was unobstructed, and her failure to look, while traversing the zone of safety, constituted contributory negligence as a matter of law.

In *Robison* v. *Oregon and Washington Railroad and Navigation Co.* 90 Ore. 509, 176 N. W. 594, it was held that if, from a place of safety on his way, the traveler in control of the vehicle in which he is riding can obtain a view of the coming train, he must look upon the course of the train from that point, and this responsibility is constant until he is safely across the railway track; that the law does not excuse him from the duty to look and listen unless there is no reasonable opportunity so to do.

No fixed or positive rule applicable to all cases can be announced. It must be remembered that railroads, of necessity, are operated at a high rate of speed in accordance with public demand; that they proceed over their own right-of-way and that the mechanical devices installed to warn the public of approaching trains may get out of order. We believe the sound rule to be, that although the fact that a signal system is not operating is an indication to the traveler that it is safe to cross, nevertheless he is not thereby released of the duty of using reasonable care for his own safety. Where the surroundings at a particular crossing give to the traveler an unobstructed view of a dangerous highway crossing he is not justified in failing to look, or, on looking, failing to see an approaching train, merely acting in reliance upon an assumption that no train is approaching. The law will not tolerate the absurdity of permitting one to testify that he looked and did not see, when, had he properly exercised his sight, he would have seen. *Dee* v. *City of Peru,* 343 Ill. 36; *Greenwald* v. *Baltimore and*

*Ohio Railroad Co.* 332 id. 627; *Schlauder* v. *Chicago and Southern Traction Co.,* 253 id. 154.

In the case before us the complaint charges that the crossing is dangerous to persons approaching it from the south. The settled rule in this State is, that a person about to cross a dangerous place has the duty of approaching it with care commensurate with the known danger, and failure to use ordinary precaution to protect oneself from injury, while driving over a known dangerous place, is, by the general knowledge and experience of mankind, condemned as negligence. *Dee* v. *City of Peru, supra; Greenwald* v. *Baltimore and Ohio Railroad Co. supra; Graham* v. *Hagmann,* 270 Ill. 252; *Lake Shore and Michigan Southern Railroad Co.* v. *Hart,* 87 id. 529; *Chicago, Burlington and Quincy Railroad Co.* v. *Damerell,* 81 id. 450; *Toledo, Wabash and Western Railway Co.* v. *Jones,* 76 id. 311.

Though there is much evidence of contributory negligence in the record we are unable to say that there is no evidence, which, taken with all reasonable intendments in plaintiff's favor, tends to support her claim, and so do not find contributory negligence on the part of appellee as a matter of law.

Counsel for appellant further argue that even though this may be so, the negligence of the driver was, in this instance, to be imputed to the appellee, for the reason that she and her sisters were engaged in a joint enterprise at the time of the accident, and that the rule that when two or more persons are engaged in a joint enterprise or undertaking in the use of an automobile, the contributory negligence of one will bar recovery by either, where the claimed damage arises out of a matter within the scope of a joint undertaking, is applicable here. The rule appellant seeks to invoke is well settled. (*Beaucage* v. *Mercer,* 206 Mass. 492, 92 N. E. 774; Restatement of Law of Torts, sec. 491; 20 R. C. L. 149; 2 R. C. L. 1208; 45 Corpus Juris, 1031. In the Restatement of Law of Torts,

*supra,* it is said that when a journey in which the occupants, including the driver of the vehicle, are participating, is, itself, a part of a business enterprise in which the parties are mutually interested, they are engaged in a joint enterprise, and it is immaterial that the particular journey is a single transaction and is not a part of a general course of business in which they are associated as partners or otherwise; that it is also immaterial whether the automobile is owned or hired by one or the other or by them jointly, and that the use of the automobile, as a part of the common business enterprise, makes each responsible for the manner in which it is operated. If there is a prior arrangement that there shall be a substantial sharing of the expense, the host and guest relation does not exist.

This rule is recognized in *Lucey* v. *John Hope & Sons Engineering Co.* 45 R. I. 103, 120 Atl. 62; *Connell* v. *Oregon Short Line Railroad Co.* 50 Utah, 573, 168 Pac. 335. Of such a case also was *Tannyhill* v. *Kansas City C. & S. Railway Co.* 279 Mo. 158, 213 S. W. 818, where it was held that two brothers, who were returning from a trip to another town in an automobile jointly owned by them and another brother, were engaged in a joint undertaking, and the admitted negligence of the driver was imputable to the deceased and precluded recovery. So in *Coleman* v. *Bent,* 100 Conn. 527, 124 Atl. 224, where several persons agreed to go on a fishing trip, one furnishing the car and the other bearing all the current expenses of the trip. It was held that it was a question for the jury to determine whether or not they were engaged in a common enterprise.

In the case before us, though it is not shown who owned the automobile, there is no dispute as to the object and the purpose of the trip. Appellee, who was the only witness on the question, testified that she and her two sisters joined in the payment for the gasoline and the expense of the trip to Springfield for the purpose of getting material to decorate their home, the cost of which was to be borne by

each, equally; that at one point the appellee wished to stop for another purpose, but, as the stop was being made, decided that she would see the party on their return trip and the journey was continued. It is, of course, impossible for two persons to successfully drive an automobile, but it seems clear from this testimony that the purpose of the trip to Springfield was a joint one and that these three sisters were engaged in a joint enterprise. In such a case the possession of the vehicle is joint and each has a right to control its operation. *Coleman* v. *Bent, supra; Cunningham* v. *Thief River Falls,* 84 Minn. 27, 86 N. W. 742; *Bryant* v. *Pacific Elevated Railroad Co.* 174 Cal. 737, 164 Pac. 385; *Boyden* v. *Fitchburg Railway Co.* 72 Vt. 89; Huddy on Automobiles, sec. 514, 2 R. C. L. 1208.

Applying this rule, it is clear that negligence of the driver when it is shown by the evidence, is to be imputed to the other occupants of the car. In this condition of the record the court gave two instructions which, in effect, told the jury, as a matter of law, that the plaintiff was a guest only, and that they could not find that a joint enterprise existed. The court also instructed the jury that if they believed the defendant was guilty of negligence which was the proximate cause of the injury, and that the plaintiff, at the time of the injury, was in the exercise of reasonable care for her own safety, they were to find the defendant guilty. These instructions clearly eliminated the rule applicable to joint enterprise and were erroneous. Defendant offered an instruction which told the jury if they believed, from the evidence, that the plaintiff and the driver of the automobile in which she was injured were, at the time of the collision, engaged in a joint enterprise, then the plaintiff would be chargeable, under the law, with any negligence of the driver of the automobile which contributed in any degree to the collision. The errors in giving and refusing instructions require reversal of the judgment.

Error also intervened in receiving testimony offered on behalf of the plaintiff that the original electric flasher signal was replaced after the accident by another which worked perfectly. In a case such as this the question of negligence is to be determined only from what occurred before and at the time of the accident, and evidence of repairs made after the accident is not admissible. *City of Bloomington* v. *Legg,* 151 Ill. 9; *Weber Wagon Co.* v. *Kehl,* 139 id. 644; *Marder, Luse & Co.* v. *Leary,* 137 id. 319; *Hodges* v. *Percival,* 132 id. 53.

For the errors indicated the judgment of the Appellate Court, affirming the judgment of the circuit court, is reversed, and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*