John **PINKOWSKI**, Plaintiff-Appellee,

v.

**Ralph COGLAY**, doing business as Mohawk Equipment Company, Defendant-Appellant.

No. 14741.

United States Court of Appeals Seventh Circuit.

May 24, 1965.

Rehearing Denied July 8, 1965.

Gordon R. Close, Richard E. Mueller, Chicago, Ill., for defendant-appellant, Lord, Bissell & Brook, Chicago, Ill., of counsel.

Vincent M. Clark, John G. Phillips, Edward Bradley and Thomas Bradley, Chicago, Ill., for plaintiff-appellee, Jones and Clark, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This diversity action was brought by plaintiff John Pinkowski against defendants, A. B. Arthur and A. J. Nelson, doing business as Arnel Trading (Arnel), Ralph Coglay, doing business as Mohawk Equipment Company (Mohawk) and Fred Keefe.

Plaintiff's complaint alleged he was injured as a result of Keefe's negligence and that Keefe was an agent of Arnel and Mohawk or, in the alternative, that defendants were engaged in a joint venture. Plaintiff sought recovery of damages for his alleged injuries.

Approximately three months prior to the injury complained of, Mohawk leased a truck tractor to Arnel. Keefe executed this lease on behalf of Mohawk.

On December 4, 1959, at Boston, Massachusetts, fish were loaded by Arnel onto a truck trailer owned by Arnel. The tractor leased by Mohawk to Arnel was hitched to this loaded trailer. Keefe drove the unit to Chicago for delivery to Halfpap & Company (Halfpap).

On December 7, Keefe unloaded the fish at Halfpap and was assisted by plaintiff, an employee of Halfpap. A box of fish being moved by Keefe slipped causing it to strike another box which fell and struck plaintiff's left leg.

Plaintiff had previously injured this leg. In August, 1960 after the above-mentioned accident, the leg was amputated. The cause of the amputation was contested at the trial but is not before us on appeal.

As stated, plaintiff filed suit against Keefe, Arnel and Mohawk. Prior to trial, plaintiff moved for summary judgment against Keefe on the issue of liability. The district court granted this motion. On the second day of trial,

Keefe and Arnel entered into a written covenant not to sue with plaintiff and his wife and paid them $45,000. Keefe and Arnel were dismissed from the suit.

A jury verdict was returned in favor of plaintiff and against Mohawk in the amount of $75,000 and judgment was entered thereon.

Mohawk moved for judgment notwithstanding the verdict on, in the alternative, for a remittitur of $45,000. The district court in a memorandum opinion denied Mohawk's motions holding that, "From these facts the jury could reasonably infer that Keefe was either the agent of * * * [Mohawk] or that all the defendants were engaged in a joint venture" and that Mohawk was not entitled to a remittitur. Mohawk appealed.

The principal issues presented on appeal are whether Mohawk is liable to plaintiff because Keefe was Mohawk's agent in unloading the fish or because defendants were engaged in a joint venture; or, in the alternative, whether the $75,000 judgment against Mohawk should be reduced by the $45,000 payment made by Keefe and Arnel to plaintiff and his wife pursuant to the covenant not to sue.

In considering the district court's denial of Mohawk's motion for judgment n. o. v., we must consider the evidence in the light most favorable to plaintiff.

Both parties cite the Illinois case of Carroll v. Caldwell, 12 Ill.2d 487, 147 N.E.2d 69 (1958) for a definition of a joint venture, which is as follows:

"It is pointed out in 30 Am.Jur., Joint Adventures, sec. 30, that courts have not laid down an exact definition of what amounts to a joint adventure inasmuch as the answer depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, and upon the nature of the undertaking as well as other facts. The most that can be done, it is said, is to point out certain general characteristics of the relationship of joint adventurers, and certain ele-

ments which are generally regarded as essential thereto. Accordingly, it can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that *there must be a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses.* Hagerman v. Schulte, 349 Ill. 11, 181 N.E. 677; Harmon v. Martin, 395 Ill. 595, 71 N.E.2d 74; Harris v. Young, 298 Ill. 319, 131 N.E. 670; 23 I.L.P. Joint Adventures; 48 C.J.S. Joint Adventures; 30 Am.Jur., Joint Adventures; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P.2d 206, 80 A.L.R. 1037; Hathaway v. Porter Royalty Pool, Inc., 296 Mich. 90, 295 N.W. 571, 138 A.L.R. 955. The same authorities, together with Berkey v. Third Ave. Railway Co., 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599, and Gleichman v. Famous Players-Lasky Corp., 241 Mich. 266, 217 N.W. 43, establish that the relationship is a matter of intent, as between the parties, and arises only where they intended to so associate themselves, such intention being determined in accordance with the ordinary rules governing the interpretation and construction of contracts." (Emphasis added.) Id. at 496–497, 147 N.E.2d at 74.

Indispensable elements of a joint venture in Illinois appear to be an association of two or more persons to carry out a single enterprise with a legitimate purpose, a community of interest in such purpose, expectation of profits and the sharing thereof and the right of each person to direct and govern the conduct of each other person. See ibid. and 23 Illinois Law and Practice, Joint Adventures, pp. 59–65 (1956) and cases cited therein.

The following facts in the instant case appear to be undisputed.

Mohawk owned the tractor in question and desired to keep it operating and earning money in order to pay money owed on the tractor. Mohawk (by Coglay) contacted Keefe (a truck driver) and asked Keefe if he could keep "my truck busy * * * and bring me in revenue to pay the bills and make yourself a living in the bargain?"

Keefe began driving Mohawk's tractor and hauled various items, including steel. The threat of a steel strike caused Keefe to negotiate with Arnel and, as agent for Mohawk, to enter into a written exclusive lease with Arnel whereby the tractor was leased to Arnel beginning September 18, 1959. It was verbally agreed that Keefe would drive the tractor.

Keefe began driving a "standard run" which left Boston every Friday night with a load of fish to be delivered to Halfpap in Chicago on Monday morning.

The name "Arnel Trading" was painted on both sides of the tractor in September, 1959. Arnel agreed to pay $250 for the run between Boston and Chicago and another $250 if a load of Arnel's was hauled from Chicago to Boston. Keefe and Mohawk divided this income equally. Thus, if Arnel paid $500 for a round trip, Keefe and Mohawk each received $250. Keefe paid for fuel, tolls and other expenses out of his $250. Repairs to the tractor were paid by Mohawk. No money was withheld from Keefe's $250 for income tax purposes. The tractor was never used by another carrier while under the exclusive lease arrangement with Arnel.

The following facts demonstrate that Mohawk had no control over or connection with the delivery of fish: the fish were loaded onto the truck trailer in Boston by Arnel; the bills of lading for the fish were in the name of Arnel; Keefe filled out logs which he gave to Arnel; Arnel receipts were signed by consignees for the fish; Keefe made collections on behalf of Arnel; and the destination of the tractor-trailer unit and

the date and time of arrival were determined by Arnel.

Following the delivery of the fish to Chicago, Arnel would direct Keefe concerning the items, usually wool, to be picked up for the return trip to Boston.

■ Applying these facts to the law above set out, we hold, as a matter of law, that Keefe, Arnel and Mohawk were not engaged in a joint venture in transporting and unloading the fish. There was no community of interest, sharing of profits or right of Mohawk to direct and govern the conduct of Keefe in the delivery of the fish.

■ The district court and plaintiff quote and rely upon the following testimony of Keefe as demonstrating a community of interest:

"I [Keefe] was satisfied to continue with him because I felt it would be *easier on me than hauling steel.* Coglay [Mohawk] was satisfied with that, he was *paying his notes,* and even if he wasn't getting rich he was at least building some equity in the truck. Arnel was satisfied. *The fish then was being delivered* and everyone was going along fine." (Emphasis added.)

In our opinion, this statement clearly shows a divergence of interests.

The district court in its memorandum opinion states that in Illinois there is no requirement that profits be shared in order to establish a joint venture, citing Grubb v. Illinois Terminal Co., 366 Ill. 330, 8 N.E.2d 934 (1937). The fact situation and legal concept involved in that case are inapposite from those in the instant case. In Grubb, plaintiff was an occupant in an automobile which ran into the side of defendant's electric train. Plaintiff and the driver of the car were sharing expenses of a trip to Springfield, Illinois for the purpose of obtaining material to decorate their home. The issue involved was whether the negligence of the driver could be imputed to plaintiff. This was to be determined by whether plaintiff was a guest in the car or whether plaintiff and the driver were

engaged in a joint enterprise. The latter would invoke "the rule that when two or more persons are engaged in a joint enterprise or undertaking in the use of an automobile, the contributory negligence of one will bar recovery by either, where the claimed damage arises out of a matter within the scope of a joint undertaking." Id. at 338, 8 N.E.2d at 938.

The legal concept of joint adventure involved in the instant case is a business arrangement similar to a partnership. "While a joint adventure is not identical with a partnership, practically the only distinction is that a joint adventure relates to a single specific enterprise or transaction and a partnership relates to a general business of a particular kind * * *." 23 Illinois Law and Practice, Joint Adventures, § 2, p. 61 (1956). "The expectation of a profit and the sharing thereof are * * * indispensable elements." Id. § 1, p. 60.

■ We further hold there was no issue of fact for the jury concerning whether Keefe was an agent of Mohawk in the delivery and unloading of the fish.

■ Keefe and Arnel, in their amended answer, admitted that Keefe was an agent for Arnel in unloading the trailer. Of course, this does not mean that Keefe could not also have been an agent for Mohawk in the unloading. Yankey v. Oscar Bohlin & Son, Inc., 37 Ill.App.2d 457, 186 N.E.2d 57 (1962).

■ The fact that Keefe was the agent of Mohawk in negotiating and entering into the exclusive lease agreement with Arnel does not create an inference that Keefe was an agent of Mohawk in unloading the fish. 1 Illinois Law and Practice, Agency § 124, p. 759 (1956).

We find no evidence in the record from which the jury could reasonably find that Keefe was Mohawk's appointed or implied agent in delivering and unloading the fish, or that Mohawk was estopped from denying that Keefe was its agent.

In sum, we hold, as a matter of law, that Mohawk was not engaged in a joint

venture with Keefe and Arnel and that Keefe was not Mohawk's agent. The district court erred in refusing to grant Mohawk's motion for judgment n. o. v.

The judgment is reversed and the case is remanded to the district court for entry of judgment in favor of Mohawk and against plaintiff.

Reversed and remanded.