DAVID BABINGTON, Plaintiff-Appellant, *v.* ROBERT BOGDANOVIC *et al.*, Defendants-Appellees.

(No. 11430;

Fourth District—September 27, 1972.

Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellant.

Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield, (Alfred F. Newkirk and Grady E. Holley, of counsel,) for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

Legal theories are like all of man's ideas: there are no new ones—only endless variations of old ones. And such is the case here, for it involves the question of "joint venture"—a concept of legal antiquity that has been the subject of myriad appeals here and in other jurisdictions.

Here are the essential facts:

Babington, a young school teacher, his fiancee, her parents, her brother and her sister all drove to Wisconsin for a four-day vacation. It was agreed that they would use Babington's car and that the Fishers, his future in-laws, would furnish the gas and oil. After spending three to four days in Wisconsin (swimming, water skiing, fishing and relaxing), they commenced the return journey at approximately 7:30 in the evening. Babington drove much of the night on the return trip to Menard County, Illinois, but early in the morning relinquished the driving to his future father-in-law, Fisher. Babington took the passenger side in the right-hand front seat, his fiancee sat in the middle, and all of the passengers in the car proceeded to go to sleep.

Meanwhile, a tractor-trailer flatbed loaded with hardwood, weighing approximately 70,000 pounds, and heading for St. Louis, was on the same U.S. 51 highway when it developed headlight trouble. Shortly thereafter, the unit lost all of its power and Bogdanovic (the driver) was unable to pull the rig off the highway since the shoulder was too narrow. The unit came to a stop in the southbound lane of U.S. 51, a few feet north of the Dimmick Road intersection in La Salle County, Illinois. Bogdanovic and his driving partner, Peterson, testified that the first thing they did was to put out reflector and fusee flares both in front of, and behind, the truck. Bogdanovic then went to a nearby farmhouse and called both the State police and a wrecker service, while Peterson flagged down another truck, had it park in front of the disabled unit and turn on its four-way flasher lights as a warning for north-bound traffic. Shortly thereafter, Illinois State Trooper Yerly arrived at the scene, parked his squad car on the opposite shoulder facing north, with

dim lights on, and flasher lights and red rotating light in operation. Immediately upon Trooper Yerly's arrival, the truck that had been flagged down drove off and Peterson was directed by Trooper Yerly to put out a flare to the south.

But before this could be accomplished, Babington's car, driven by Fisher, came from the north at a high rate of speed. Trooper Yerly got out into the road with a five-cell flashlight and attempted to flag it down, but without success. The automobile ran into the rear end of the disabled tractor-trailer, and pushed it twenty-three feet, ten inches, to the south, at the same time leaving over 100 feet of skidmarks. Fisher was killed and all of the other occupants sustained injuries.

In the case before us, a jury returned a verdict unfavorable to Babington, and he appeals upon two grounds: (1) that the trial court erred in giving defendant's jury instructions that the passenger-driver's negligence was imputable to the owner-occupant if the jury found that a joint venture existed; and (2) that the trial court further erred in admitting into evidence a signed statement given by a witness who denied the statement in the form presented at trial, without requiring the production of the person who took the statement to prove that it was actually given as written down.

We will treat the issues as presented in inverse order, considering the last first. Upon the trial of this cause there was considerable evidence introduced by various witnesses relative to whether flares had been actually placed about the truck. Some of this testimony was contradictory. And, concededly, the issue was a material element in the trial. A Mrs. Roach testified that sometime after 2:00 A.M. she heard a crash, jumped up, called her husband, grabbed a flashlight and went out to the scene of the accident. As is pertinent to our consideration here, she testified that she observed no flares or flashers other than those on the police car. Upon cross examination by defendant, Mrs. Roach identified her signature on a signed statement, read the statement and testified that she had read it at the time she signed it. Essentially, as is relevant here, she said in the statement that the barking of the dogs woke her up at 3:00 A.M. and that she saw a pinkish-red flare burning along the west side of Route 51. She testified "That isn't all I told the gentleman * * * I said I *thought* I saw a flare". Upon redirect she said that the gentleman who took the statement from her, and wrote it down, gave his name at the time of the statement (about a month after the accident) but she could not remember his name, nor would she be able to identify him at the time of trial. Over objection, the court admitted the statement into evidence during the defendant's case in chief. Plaintiff contends that it is the law in Illinois that where a witness qualifies a statement given,

the opposing party must call the person to whom the alleged impeaching statement was given to testify to the statement before it can be admitted into evidence.

■■ We disagree. In 1904, in the case of *Illinois Central R.R. Co. v. Wade,* 206 Ill. 523, 529-530, 69 N.E. 565, the Illinois Supreme Court very succinctly set forth the dominating law in this area:

> "That the statements of a witness made out of court, orally or in writing, if contradictory on a material point to his sworn statement as a witness, may be introduced in evidence, not as substantive proof of the truth of such statements but as tending to discredit the witnesss, has been so frequently declared by courts and law writers and is so universally understood and accepted that the citation of authorities in support of the proposition is considered entirely unnecessary.
>
> \* \* \* When it is desired to impeach a witness by proof of oral statements made by him out of court contradictory upon a material point of his testimony given from the witness stand, it is requisite that a foundation for the introduction of such oral statements be made by asking the witness if he did not, at a given time and place, in the presence of specified persons, make the supposed contradictory statements; but where the supposed contradictory statements were reduced to writing by the witness, or signed by him, a sufficient foundation for the introduction of the writing is laid by showing the paper to the witness, allowing him to inspect it and to read it if he desires, and proving by him, or others, that the signature thereto is his genuine signature."

■■ The above holding from the *Wade* case, in our view, continues to be the controlling law in Illinois. (*Esderts v. Chicago, Rock Island & Pacific R.R. Co.,* 76 Ill.App.2d 210, 222 N.E.2d 117, 125; *Hapke v. Brandon,* 343 Ill.App. 524, 99 N.E.2d 636, 638.) In the instant case, the allegedly impeaching statement was offered and admitted at the opportune time, after a correct and proper foundation had been laid. No error.

The capstone question in this appeal, however, demands closer scrutiny. The trial court gave two instructions for the defendant on the question of "joint enterprise"—one being the definition instruction (72.04) from Illinois Pattern Jury Instructions and the other directing the jury that if it found Babington and Fisher to be engaged in a joint enterprise at the time of the accident, then any negligence by Fisher would be imputed to Babington and would be a bar to his recovery. Plaintiff claims this to be reversible error since the facts of the case do not bring it within the perimeter of "joint enterprise."

Both litigants here have cited to the court an avalanche of cases on this issue—Illinois Supreme, Illinois Appellate, Federal courts, and foreign State courts. Some courts refer to this topic under consideration as "joint enterprise", some as "joint venture", and others as "joint adventure", "imputed negligence", "business enterprise", "common business enterprise". Yet none of these phrases which denote the joint venture doctrine possess any particular magic which automatically determines its aptness. The doctrine must be applied, not in a vacuum, but with common sense and logic to a specific factual situation. From the mountain of case law in this area, both foreign and domestic, we do not find it difficult to at least arrive at this initial impression: regardless of the facts, one may find a case to support either the application of the doctrine, or its rejection!

Historically, the doctrine of imputed negligence has been repudiated by most courts in this country, except in limited classes of cases, one being the "joint enterprise" situation. The Illinois Supreme Court said in *Summers v. Summers*, 40 Ill.2d 338, 239 N.E.2d 795, 799, "* * * the negligence of a driver is not imputed to an owner-passenger in the absence of the relationship of *respondeat superior* or the existence of a joint enterprise." And it has been held that before negligence can be imputed there must exist between the parties "some relation of master or superior and servant or subordinate or other relation akin thereto." (*Johnson v. Turner*, 319 Ill.App. 265, 49 N.E.2d 297, 304.) Yet others inject the requirements of "common financial interest indicating a *quasi* partnership entailing the usual joint control." *Fisher v. Johnson*, 238 Ill.App. 25, 31.

The leading Illinois case found on the joint enterprise theory is *Grubb v. Illinois Terminal Co.*, 366 Ill. 330, 8 N.E.2d 934, 938, where the court held:

> "* * * that when a journey in which the occupants, including the driver of the vehicle, are participating is, itself, a part of a *business* enterprise in which the parties are mutually interested, they are engaged in a joint enterprise, and it is immaterial that the particular journey is a single transaction and is not a part of a general course of business in which they are associated as partners or otherwise; that it is also immaterial whether the automobile is owned or hired by one or the other or by them jointly; and that the use of the automobile, as a part of the common *business* enterprise, makes each responsible for the manner in which it is operated. If there is a prior arrangement that there shall be a substantial sharing of the expense, the host and guest relation does not exist." (Emphasis ours.)

■■ We have purposefully underscored the term *business,* since that factor was again flagged by the Illinois Supreme Court in *Smith v. Bishop,* 32 Ill.2d 380, 205 N.E.2d 461, 464: "The rule applied in the *Grubb* case states that where an automobile is used as part of a common business enterprise, and the occupants are mutually interested in the trip itself as a part of such enterprise, each is responsible for the manner in which the car is operated." And in *Robbins v. Campbell,* 72 Ill.App.2d 252, 218 N.E.2d 492, 494, the court said that "Absent evidence of a business enterprise, the rule enunciated in *Grubb v. Illinois Terminal* does not apply." The court in *Enlow v. Illinois Central R.R. Co.,* 103 Ill.App.2d 269, 243 N.E.2d 847, 851, cited the *Grubb* case and was even more emphatic as to the requirement of the business element: "To define a joint enterprise there must be evidence of a common *business* purpose in which the occupants are mutually interested in the trip itself as part of such purpose and where each is responsible for the manner in which the car is operated." (Emphasis *theirs.*) And even in those cases which stress the factor of right of control, the requirement of the *business* aspect is still a prerequisite. *Bridgewater v. Wagoner,* 28 Ill.App.2d 201, 170 N.E.2d 785, 788-789, refers to the issue as one of "joint or common business enterprise" and "joint business venture". See also *Pinkowski v. Coglay,* 347 F.2d 411.

The courts here, and in other states, have refused to extend imputed negligence under the joint venture doctrine where the trip was for social rather than economic reasons (*Anthony v. New York Central R.R. Co.,* 61 Ill.App.2d 466, 209 N.E.2d 686, 690), where the purpose was strictly recreational and no business was involved (*Birnbaum v. Kirchner,* 337 Ill.App. 25, 85 N.E.2d 191, 193), and where the trip was merely for pleasure (*Berg v. New York Central R.R. Co.,* 323 Ill.App. 221, 55 N.E.2d 394, 398). Other courts have stated that: a mutual pleasure trip without more does not create a joint enterprise (*Staken v. Shanle,* 23 Ill.App.2d 269, 162 N.E.2d 604, 609); mere ownership is not sufficient to impute liability where the father had nothing to do with the operation or control of the car by his son at the time of the accident (*Zeeb v. Bahnmaier,* 103 Kan. 599, 176 P. 326); where the owner had "loaned" his car to the driver, the automobile had passed into the possession and control of the driver, that the owner did not have the right or authority to direct the manner of its operation and it was as much in the control of the driver as it would have been had he been the absolute owner of the vehicle (*Hartley v. Miller,* 165 Mich. 115, 130 N.W. 336); and where a husband "borrowed" his wife's car he was a bailee and, even though she was riding in the car with him, "until she resumed control of the property, the operation of the car was as completely within his control

as if he had been the fee-simple owner thereof" *Virginia Ry. & Power Co. v. Gorsuch,* 120 Va. 655, 91 S.E. 632, 633.

■■ Plaintiff argues that the "business" element is the paramount requirement for a foundation of joint enterprise, and since that element is missing in the case here on appeal, joint enterprise instructions were erroneous. Defendant urges that "the important element is the right of control" and "the sharing of expenses appears to satisfy any requirement as to a business element." We agree that "control" is an important element but we consider the better view to be that the "common business purpose" factor is dominant and must first exist before the joint enterprise doctrine can be viewed as germane. Nor can we agree that the mere sharing of picayune and paltry minimal expenses will satisfy the fundamental "business" factor required. We are faced here with a purely recreational and pleasure outing—a vacation trip. The plaintiff and his future in-laws agreed that his car would be used and that they would furnish the gas and oil. As a matter of fact, the Fishers only paid an undisclosed portion of such expenses. Babington and Fisher both took turns driving, a fact that is not at all unusual under these circumstances. Where was the business element? Does the mere contribution of an unknown portion of the gas and oil money on a vacation trip transform a strictly pleasure excursion into a "common business enterprise"? We think not.

■■ And where is the control element? At the time of the tragic accident, Babington (like all others in the car but the driver) was asleep. Does a sleeping owner of an automobile still possess a viable right of control over the driver? Whether that right of control has been abandoned (*Simaitis v. Thrash,* 25 Ill.App.2d 340, 166 N.E.2d 306, 311), or whether he has "loaned" the car to Fisher (*Hartley v. Miller, supra*), or whether Fisher is now a bailee of the auto (*Virginia Ry. & Power Co. v. Gorsuch, supra*), to hold that Babington, while asleep, still possessed control of the automobile appears to us to tax credulity to the breaking point. There was no business enterprise, for it never existed; there was no control, for it had passed from Babington's exercisable possession. To our view, the doctrine of joint enterprise has been, in many instances, too loosely applied. We refuse to extend it here.

■■ In fine, the trial court erred in instructing the jury on joint venture, and the error was sufficiently prejudicial as to require a reversal. Accordingly, this cause is reversed for the reasons cited, and remanded for new trial.

Reversed and remanded.

TRAPP, P. J., and CRAVEN, J., concur.